Richmond.

## E. I. Du Pont, Etc., Co. v. Snead's Adm'r.

January 16, 1919.

Absent, Sims, J.

1. Pleading—*Allegation of Legal Duties—Judicial Notice of the Law.*—While pleadings frequently contain allegations of legal duties or obligations which have been violated, this is never necessary as to rights secured by the common law or general statutes. It is the function of pleadings to state facts, and the court takes judicial notice of the law. The judgment in such cases is but the conclusion of a perfect syllogism, the major (but unexpressed) premise of which is the substantive law, and the minor, the fact put in issue by the pleadings.

2. Pleading—*Declaration—Allegation of Duty.*—If the defendant wishes to contest the law arising upon the facts stated in the declaration, he must do so by demurrer. If he wishes to contest the fact or facts, he must do so by the appropriate pleading. But the existence of the legal duty need not be stated in the declaration, and its omission does not render the declaration faulty. What must be stated are the *facts* out of which the legal duty arises. When these are stated, the court will apply the law arising thereon.

3. Pleading—*Declaration—Test of Sufficiency.*—The test of the sufficiency of every declaration is, does it state a case, and does it state the facts with sufficient certainty to be understood by the defendant who is to answer it, the jury who are to try the issue, and the court which is to render judgment. If so, the only remaining question is: Assuming the allegations to be facts, has any right of the plaintiff, which the substantive law protects, been violated by the defendant? If, on demurrer, the court can say, if the facts stated are proved, the plaintiff is entitled to recover, then the declaration is sufficient.

4. Master and Servant—*Death of Servant By Wrongful Act of Fellow Servant in Scope of His Employment—Declaration.*—In an action against a master to recover damages for the death of his servant by the wrongful act of one B., a fellow servant, in the scope of his employment, the declaration alleged in substance that B. was the servant of the defendant company, that

23

the plaintiff's intestate was upon defendant's premises by invitation, and that B., while in course of his employment as a servant of the defendant, wrongfully and unlawfully caused the death of the plaintiff's intestate by shooting him with a pistol. One of the counts also charged that the shooting was done "negligently." The declaration also contained a number of averments concerning the undertaking of the defendant to furnish the intestate board and lodging and of the duties arising out of that undertaking, but whether the intestate were a guest, or not, the substance of all the allegations remained that he was an invitee and wrongfully and unlawfully killed by the defendant's servant while acting in the scope of his employment. If this be true, then clearly the defendant is liable. The allegation of the relation of inn-keeper and guest was probably intended as mere aggravation. The fact that the intestate was on the premises by invitation is distinctly charged, and the allegation of the relation of inn-keeper and guest was wholly unnecessary to entitle the plaintiff to maintain her action. All the facts necessary to entitle the plaintiff to maintain her action were stated in the declaration, and with as much particularity as the law required, and the demurrer to the declaration was properly overruled.

5. AMENDMENTS—*Time of Allowing—After Witnesses Have Been Discharged.*—In the instant case an amendment had been suggested by the judge pending the introduction of the evidence, and he had further stated that the question would be certain to arise again when they came to consider the instructions. On argument certain instructions were objected to by defendant's counsel on the ground that the declaration was not broad enough to warrant them. The court took time to consider the instructions, and while considering the instructions the judge had a copy of the declaration in which he inserted in pencil the suggested amendments, and when he returned into court he called attention to what he had done, and council for the plaintiff accepted and adopted the amendment. The defendant did not claim that it was taken by surprise by the amendment, nor was any motion made to delay the trial, nor does it appear how, if at all, the defendant was injured thereby.

*Held:* That there was no error in the ruling and action of the trial court in this matter.

6. AMENDMENTS—*Freely Allowed.*—Amendments are freely allowed and are to be favored when they promote the ends of justice. It would be a reproach to the administration of justice to permit a substantial right to be sacrificed to a mere form which

did not affect the rights of the parties or the mode of procedure, and which could be readily changed without injury or injustice to anyone.

7. INSTRUCTIONS—*Repetition.*—It is sufficient in all cases for the trial court to give such instructions as are necessary or proper to enable the jury to arrive at a correct verdict, after considering the evidence in all of its phases. After so instructing them it may reject all other instructions tendered, as it is never error to refuse an instruction upon any point upon which the jury has already been sufficiently instructed.

8. INSTRUCTIONS—*Practice—Request.*—If the instructions given are founded upon the evidence, correctly state the law, and fully cover the case, it is immaterial whether they were prepared by counsel or by the court, and all other instructions may be refused. The trial court, however, cannot be required to instruct the jury generally in the case, nor is it the practice in this State for the trial court to give instructions unless requested, except where it is necessary to prevent a failure of justice.

9. INSTRUCTIONS—*Punctuation.*—In the instant case the jury were instructed that if intestate "was furnished lodging and board by defendant at the restaurant," etc., this was objected to because there was no evidence to the effect that intestate was furnished lodging *at the restaurant.*

    *Held:* That the objection was hypercritical and not well taken. By placing a comma after "lodging" the meaning is plain. That part of the instruction would then read and that "he was furnished lodging, and board by the defendant at the restaurant."

10. MASTER AND SERVANT—*Death By Wrongful Act—Instructions.*— An instruction in the instant case offered by defendant and refused by the court, that unless the jury believed from the evidence that plaintiff's intestate was at the time he was shot by defendant's servant a patron of the defendant's restaurant who had come to the restaurant or dining room for the purpose of procuring food or drink, there can be no liability on the defendant in this case, was manifestly not correct. It wholly ignores the doctrine of *respondeat superior,* and, although intestate was in no fault whatever, the instruction gave to defendant's servant the right to kill intestate under the circumstances mentioned, and exempted the defendant from liability, although defendant's servant was acting in the course of his employment and in furtherance of his master's business.

11. INSTRUCTIONS—*Repetition of Instructions—Self-Defense.* — An instruction was objected to because it left out of view the

principle that upon a plea of self-defense, the jury must view the case from the standpoint of the party inflicting the injury. This principle was more properly embodied in another instruction given by the court, and therefore there was no necessity for inserting it in the instruction objected to.

12. MASTER AND SERVANT—*Scope of Servant's Employment—Guard in Restaurant—Death By Wrongful Act.*—In an action by plaintiff to recover damages for the death of her intestate, who was killed by defendant's servant, it was insisted that there was no evidence that B (defendant's servant) while acting in the scope of his employment, wrongfully brought on the difficulty, and the instructions should not have embodied any such idea. There was evidence tending to show that B. was the servant of the defendant, that he was at the mess hall in that capacity and for the purpose of serving his master, that the act of preventing smoking was in the furtherance of his master's business, and that the killing of the intestate was neither justifiable nor excusable. There was no error, therefore, in giving this instruction.

13. MASTER AND SERVANT—*Wilful Tort of Servant—Striking Out Evidence as to Acquittal and Retention of Servant.*—In an action for death of plaintiff's intestate killed by defendant's servant, evidence of a witness as to the servant's acquittal in a criminal prosecution for killing intestate, and his retention in defendant's employment, was ordered to be stricken out by the court.

    *Held:* Not prejudicial error, as without this witness's evidence there was no other testimony upon which to base ratification by defendant.

14. APPEAL AND ERROR—*Instructions—Instruction Given More Favorable Than the One Asked.*—The refusal to give a proper instruction in the very language asked is not ground for reversal where it affirmatively appears that the party asking it could not have been prejudiced by such refusal, and that the instruction substituted by the court was more favorable to him than the instruction which he had asked.

15. INSTRUCTIONS—*Sufficiency—Master and Servant—Death By Wrongful Act of Servant.*—In an action against a master for damages for death of plaintiff's intestate, who was killed by defendant's servant, where the jury had been instructed that "the burden is on the plaintiff to show that the injury complained of resulted from some source for which the defendant in this case is liable, and unless this is done the jury must find for the defendant," it was not error to modify an instruction requested by defendant by striking out that part of it which in effect told

the jury that if the servant became involved in a personal diffi-
culty with intestate, in no way connected with the discharge of
his duty, there could be no recovery from defendant. If the
servant became involved in a personal difficulty with intestate,
in no way connected with his duties as servant of the defendant,
then the injury complained of resulted from a source for
which the defendant was not liable, and the jury were already
sufficiently instructed. Moreover, there was no evidence in the
case to support the theory that the shooting by the servant was
"in no way connected with the discharge of such duties."

Error to a judgment of the Circuit Court of Prince George
county, in an action of trespass on the case. Judgment for
plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Plummer & Bohannon,* for the plaintiff in error.

*P. A. L. Smith, Albert S. Bolling* and *R. W. Ivey,* for the
defendant in error.

Burks, J., delivered the opinion of the court.

This action was brought by the plaintiff to recover
damages for the death of her intestate occasioned, as she
alleges, by the wrongful act of Osborne M. Brook (some-
times called Oscar M. Brooke) while acting within the
scope of his employment as the servant of the defendant
company. There was a judgment for the plaintiff, and to
that judgment this writ of error was awarded to the de-
fendant.

The declaration on which the case was tried contained
two counts, to each of which the defendant demurred. The
declaration, after setting out that intestate was employed
by the defendant, and that the defendant conducted a mess

hall, or restaurant, and bunk houses, for its employees, and that Brooke was employed by the |defendant as| a guard to preserve order about the premises, alleges that the said "Oscar M. Brooke while in the scope of his employment, did negligently, carelessly and wrongfully fail to use reasonable and proper care to protect the said Harry G. Snead, an infant, while he was lawfully in and upon the premises of the defendant corporation by invitation, and, by said invitation on the day and year aforesaid, had entered the restaurant or dining room kept by the said defendant corporation, for the purpose of being served with food and drink. And the plaintiff says that while the said Harry G. Snead was in and upon the said premises of the defendant, the said defendant corporation, by Oscar M. Brooke, its said special agent, employee, guard or official aforesaid, who was in and about the premises aforesaid for the purposes aforesaid, and while acting within the scope of his employment, without any just and reasonable excuse or provocation, brought on and provoked an altercation with the said Harry G. Snead, and assaulted him, and without justification or excuse unlawfully and wrongfully shot and killed the said Harry G. Snead with a pistol with which the said Oscar M. Brooke was armed." The declaration also undertakes to set out the duties owing by the defendant to the plaintiff's intestate growing out of the relation existing between them and charges a breach of them. The petition for the writ of error, after summarizing the defendant's view of the declaration, contains the following statement:

"Considering the declaration as a whole, it appears that the theory of the plaintiff's case as set out therein is that your petitioner, the defendant below, was the proprietor of a restaurant or eating-house and that the plaintiff's intestate was a guest or patron of the same. Out of this relation arose certain alleged duties. These duties are

stated very generally and indefinitely, and the defendant is not advised as to the exact nature of them. Then follows in general terms, and chiefly by way of recital, an allegation of the breach of these duties without any effort at stating the particulars wherein the defendant failed to perform them."

The gravamen of the objection to the declaration is that it does not show any apparent connection between the duties alleged and the alleged breach of those duties and that the negligence complained of is not shown to have been the proximate cause of the alleged injury. This objection wholly ignores the doctrine of *respondeat superior* which is really the foundation of the action, and assumes that it is necessary that the declaration should state what duties arise on the facts set forth to show a right of action.

[1, 2] While pleadings frequently contain allegations of legal duties or obligations which have been violated, this is never necessary as to rights secured by the common law or general statutes. It is the function of pleadings to state facts, and the court takes judicial notice of the law. The judgment in such cases is but the conclusion of a perfect syllogism, the major (but unexpressed) premise of which is the substantive law, and the minor, the fact put in issue by the pleadings. Tucker on Pleading, pp. 18-19. For example, the substantive law says if A assaults B, he shall respond in damages to B, and B comes in and by his declaration says A assaulted me. The necessary conclusion from these premises, if not controverted, is a judgment in favor of B against A for damages. It is wholly unnecessary for B to say anything about the law of the case, or what were the respective rights and duties of the parties in the premises. This is a matter of law of which the court takes judicial notice. If the defendant wishes to contest the law arising upon the facts stated in the decla-

ration, he must do so by demurrer. If he wishes to contest the fact or facts, he must do so by the appropriate pleading. But the existence of the legal duty need not be stated in the declaration, and its omission does not render the declaration faulty. What must be stated is the *facts* out of which the legal duty arises. When these are stated, the court will apply the law arising thereon.

[3] The test of the sufficiency of every declaration is, does it state a case, and does it state the facts with sufficient certainty to be understood by the defendant who is to answer it, the jury who are to try the issue, and the court which is to render judgment. If so, the only remaining question is: Assuming the allegations to be facts, has any right of the plaintiff, which the substantive law protects, been violated by the defendant? If, on demurrer, the court can say, if the facts stated are proved, the plaintiff is entitled to recover, then the declaration is sufficient. *Lane Bros.* v. *Seakford,* 106 Va. 93, 55 S. E. 556, and cases cited; *Blackwood Coal Co.* v. *James,* 107 Va. 656, 60 S. E. 90.

[4] The declaration in the case at bar is quite lengthy and was amended several times. It would not be profitable to insert it in full. It must suffice to say that the counts demurred to charge in substance that Brooke was the servant of the defendant company, that the plaintiff's intestate was upon defendant's premises by invitation, and that Brooke, while in course of his employment as a servant of the defendant, wrongfully and unlawfully caused the death of the plaintiff's intestate by shooting him with a pistol. One of the counts also charges that the shooting was done "negligently." The declaration also contains a number of averments concerning the undertaking of the defendant to furnish the intestate board and lodging and of the duties arising out of that undertaking, and counsel have discussed very learnedly the obligations and duties of an inn-keeper to his guests, but whether the intestate

were a guest or not, the substance of the allegation remains that he was an invitee and wrongfully and unlawfully killed by the defendant's servant while acting in the scope of his employment. If this be true, then clearly the defendant is liable. The allegation of the relation of innkeeper and guest was probably intended as mere aggravation. The fact that the intestate was on the premises by invitation is distinctly charged, and the allegation of the relation of inn-keeper and guest was wholly unnecessary to entitle the plaintiff to maintain her action. All the facts necessary to entitle the plaintiff to maintain her action were stated in the declaration, and with as much particularity as the law required. The demurrer was therefore properly overruled.

The facts alleged in the declaration are so entirely different from those alleged in *Connell* v. *Chesapeake & Ohio R. Co.,* 93 Va. 44, 24 S. E. 467, 32 L. R. A. 792, 57 Am. St. Rep. 786, as to render the holding in that case wholly inapplicable here. There the death was occasioned by an unknown stranger who was never found. Here it is alleged to have been occasioned by a servant of the defendant acting within the course of his employment.

As to the liability of a master for the wilful torts of his servant while acting within the scope of his employment, see *Burns* v. *Poulsom,* L. R. 2, C. P. 563; *Rounds* v. *Delaware, &c., R. Co.,* 64 N. Y. 129, 21 Am. Rep. 597; *Mott* v. *Consumers' Ice Co.,* 73 N. Y. 543; *Norfolk & W. R. Co.* v. *Brame,* 109 Va. 422, 63 S. E. 1018; *Southern Ry. Co.* v. *Grubbs,* 115 Va. 876, 80 S. E. 749; Huffcut on Agency, secs. 245, 252.

The next assignment of error relates to the ruling of the trial court in the admission of evidence on behalf of the plaintiff. We have carefully considered this assignment, but find no error in the ruling of the trial court. The

questions presented by this assignment are not of sufficient general interest to warrant a discussion thereof.

[5] It is assigned as error that "the trial court erred in amending the declaration under the circumstances set out in defendant's bill of exception No. 7." The amendment had been suggested by the judge pending the introduction of the evidence, and he had further stated that the question would be certain to arise again when they came to consider the instructions. On the argument of the instructions the defendant's counsel objected to certain instructions, because the plaintiff's declaration was not sufficiently broad to warrant the giving of such instructions. The court took time to consider the instructions, and while considering the instructions the judge had a copy of the declaration in which he inserted in pencil the suggested amendment, and when he returned into court he called attention to what he had done, and counsel for the plaintiff accepted and adopted the amendment. This copy of the declaration was adopted as the declaration in the case in lieu of the original which had been misplaced. The action of the court in suggesting to counsel for the plaintiff such amendment, and in personally inserting the same in the copy of the declaration, and in permitting the declaration to be so amended after the witnesses had been discharged and the instructions argued, the defendant by counsel excepted.

The defendant does not claim that it was taken by surprise by the amendment, nor was any motion made to delay the trial, nor does it appear how, if at all, the defendant was injured thereby. When the amendment was first suggested, during the taking of the testimony, counsel for the plaintiff stated that "he would make any amendment to the declaration which the court might think proper in order to make the evidence in question admissible," and the court then stated that "the question would be certain

to come up again when the time came to consider the instructions in the case, and that the question of amendment would be further considered at that time."

[6] We find no error in the ruling and action of the trial court in this matter. Amendments are freely allowed and are to be favored when they promote the ends of justice. It would be a reproach to the administration of justice to permit a substantial right to be sacrificed to a mere form which did not affect the rights of the parties or the mode of procedure, and which could be readily changed without injury or injustice to anyone.

The fourth assignment of error is as follows:

"IV. The trial court erred in granting instructions A, B, C, D, E, F, G and H, and in refusing instructions 2, 4, 5, 7, 8, 9, 10 and 11, and in giving in lieu of instructions 2, 4, 5, 7, 8 and 9, instructions I, II, III, IV, V and VI."

[7] The facts of this case are not complicated, and a few simple instructions would have been all that was necessary to have enabled the jury to have intelligently applied the law, and yet the number of instructions offered resulted in requiring the trial court to pass on twenty-five instructions. It is sufficient in all cases for the trial court to give such instructions as are necessary or proper to enable the jury to arrive at a correct verdict, after considering the evidence in all of its phases. After so instructing them, it may reject all other instructions tendered, as it is never error to refuse an instruction upon any point upon which the jury has already been sufficiently instructed. *Richmond* v. *McCormack,* 120 Va. 552, 91 S. E. 767, and cases cited.

[8] If the instructions given are founded upon the evidence, correctly state the law, and fully cover the case, it is immaterial whether they were prepared by counsel or by the court, and all other instructions may be refused. The

trial court, however, cannot be required to instruct the jury generally in the case (*Chesapeake & Ohio R. Co. v. Stock,* 104 Va. 97, 51 S. E. 161), nor is it the practice in this State for the trial court to give instructions unless requested, except where it is necessary to prevent a failure of justice. (*De Jarnette's Case,* 75 Va. 867.).

[9] Instruction A given at the instance of the plaintiff is objected to because there was no evidence to the effect that Snead was furnished lodging *at the restaurant.* The objection is hypercritical and not well taken. By placing a comma after "lodging" the meaning is plain. That part of the instruction would then read and that "he was furnished lodging, and board by the defendant at the restaurant."

[10] It is further claimed that the instruction was misleading in that it does not distinguish between the two occasions on which Snead went to the dining room. Counsel then say that they will discuss this objection in connection with instruction ten offered by the defendant below and rejected by the trial court. The first paragraph of instruction ten "instructs the jury that unless they believe from the evidence that Harry G. Snead was at the time he was shot by Brooke a patron of the defendant's restaurant who had come to the restaurant or dining room for the purpose of procuring food or drink, there can be no liability on the defendant in this case." This is manifestly not correct. It wholly ignores the doctrine of *respondeat superior,* and, although Snead was in no fault whatever, the instruction gave to Brooke the right to kill Snead under the circumstances mentioned, and exempted the defendant from liability, although Brooke was acting in the course of his employment and in furtherance of his master's business.

Instruction B given for the plaintiff was intended to declare the doctrine of *respondeat superior,* and for what

acts and conduct of the servant the master is liable, and while, in some respects, inartificially drawn, it is certainly not amenable to the objection raised to it, which wholly ignores that doctrine.

[11] Instruction C given for the plaintiff is objected to because it is said to leave out of view the principle that upon a plea of self-defense, the jury must view the case from the standpoint of the party inflicting the injury. There was no necessity for inserting that principle in this instruction. It came more appropriately in instruction D where it is inserted in the last paragraph. The same principle is also embodied in instruction IV given by the court.

[12] It is further insisted that there is "no evidence that Brooke, while acting in the scope of his employment, wrongfully brought on the difficulty, and the instruction should not have embodied any such idea." There was evidence tending to show that Brooke was the servant of the defendant, that he was at the mess hall in that capacity and for the purpose of serving his master, that the act of preventing smoking was in furtherance of his master's business, and that the killing of Snead was neither justifiable nor excusable. There was no error, therefore, in giving this instruction.

Instruction D, given for the plaintiff, is criticised because "there is not sufficient evidence in the record to justify the granting of any such instruction." What was said about the evidence to support instruction C applies with equal force to instruction D.

Instruction E, given for the plaintiff, is criticised because not covered by the declaration. The declaration charged the wrongful and unlawful killing of Snead by Brooke, the servant of the defendant, while Brooke was acting in the course of his employment and in furtherance of the master's business. One of the defenses was self-defense, and evidence was introduced on these subjects. The in-

struction was a guide to the jury on the questions submitted, and it was proper to give it. It is further objected that the instruction "confuses the right which one has to defend himself and the right which one has to use force to overcome resistance in making an arrest." Brooke was not a public officer, and the theory of the plaintiff was that Snead was resisting an unlawful arrest, and we do not think the instruction is amenable to the criticism made of it.

[13] It is said of instruction F, given for the plaintiff, that "the objection to this instruction is to its form rather than to its substance." No discussion of such an objection is necessary.

No objection was made to instruction G given for the plaintiff.

It is insisted by the plaintiff in error that instruction H, given for the plaintiff below, was erroneous because "the disposition of the criminal case did have something 'to do with this case,' as it explained why Brooke was still in your petitioner's employ."

The instruction referred to struck from the case all of the evidence of the witness, Allen, referring to the acquittal of Brooke as the slayer of Snead on the ground of self-defense. Allen was the manager of the defendant company, and had been introduced as a witness to testify with reference to a conversation he had had with Snead's mother. He was asked no question by the defendant about whether Brooke had been retained in the employment of the company or not, but on cross-examination he was examined at length on the subject of Brooke's retention in the employment of the company. It was this evidence which was stricken out by the instruction under discussion. During this examination he was asked, by counsel for the plaintiff, and answered as follows:

"Q. After this shooting the company did not discharge him from his employment as a policeman, did it? A. I

could not answer that positively. He was arrested and confined in jail for a long time, and after he was acquitted on the ground of self-defense he was re-employed by the company."

Allen was the only witness examined as to whether Brooke was subsequently retained or discharged, and as all of his evidence on the subject stated in the instruction was stricken out, there was no evidence left in the case as to whether he was retained or discharged. If the question was stricken out, the answer was stricken out also. Many other questions were asked him along this same line, but they need not be further noticed as no other testimony was introduced tending to charge the defendant on the ground of the ratification of the act of Brooke.

The authorities are in conflict as to the effect of retaining a servant who has committed a wilful injury (Labatt's Master and Servant, secs. 2221 and 1407), but they need not be reviewed, as the record, with Allen's evidence stricken out, does not disclose any other testimony upon which to base a ratification. Under the circumstances, we do not think that the defendant was prejudiced by the instruction.

While the foregoing instructions are not in all respects approved, they were not prejudicial to the defendant.

The only errors assigned as to the rulings of the trial court upon instructions tendered by the plaintiff in error relate to the refusal to give instruction 10, and the modification of instructions 4 and 7. We have already pointed out that no error was committed in refusing to give instruction ten.

[14] The error alleged to have been committed in the modification of instruction 7 was the omission in lines 2, 3 and 4 of the words, "While Snead was standing or bending over him and pushing him back over the railing." The omission was in no wise prejudicial to the defendant, and, on the contrary, was beneficial to it. Such objections are

not proper grounds of exception, even though the instruction were correct without the omission. The refusal to give a proper instruction in the very language asked is not ground for reversal where it affirmatively appears, as it does here, that the party asking it could not have been prejudiced by such refusal, and that the instruction substituted by the court was more favorable to him than the instruction which he had asked.

[15] Instruction 4, asked for the plaintiff in error, was as follows:

"The court instructs the jury that while it was the duty of the defendant company to use reasonable care to maintain order in its mess halls and to use reasonable care to protect its patrons who came there to get their meals, it is not an insurer of the safety of its patrons, *and if you believe from the evidence that, in order to perform these duties, the defendant corporation employed Osborne M. Brooke, and that it used due and proper care in employing him and in retaining him in its employ, and that Brooke became involved in a personal difficulty with Snead, in no way connected with the discharge of such duties, there can be no recovery, and the jury must find for the defendant.*"

The trial court modified this instruction by striking out the words in italics. In this there was no error. The court had already told the jury, in instruction one given for the defendant, that "the burden is on the plaintiff to show that the injury complained of resulted from some source for which the defendant in this case is liable, and unless this is done the jury must find for the defendant." If Brooke became involved in a personal difficulty with Snead, in no way connected with his duties as servant of the defendant, then the injury complained of resulted from a source for which the defendant was not liable, and the jury were already sufficiently instructed. Moreover, there was no evidence in the case to support the theory that the shoot-

ing by Brooke was "in no way connected with the discharge of such duties." The parties were working in a powder plant, in which smoking was prohibited at various points. Among the duties devolving upon Brooke was to see, not only that order was preserved, but that there was no smoking within the prohibited territory. It was part of his duty to see that the regulations about smoking were carried out. Brooke was the chief witness examined on behalf of the defendant. At the time of the difficulty Snead was smoking a cigarette, and Brooke testified as follows: "I told him he would either have to stop smoking or go down to No. 3 mess hall, or I would have to carry him to headquarters, and he laughed in a sarcastic sort of way and told me I could not carry him or the cigarette he was smoking, and then I started to lay my hands on him and tell him to go with me to headquarters." It was at this juncture that the difficulty took place, resulting in the shooting of Snead by Brooke. Other witnesses testified to the same effect. It will be observed, therefore, that it cannot be said with any propriety that the difficulty between Snead and Brooke was in no way connected with the discharge by Brooke of his duties. On the contrary, it grew out of his purpose to enforce the rule of the company which he was put there to enforce.

The plaintiff in error comes to this court as on a demurrer to the evidence, and there was abundant evidence to support the verdict. The motion, therefore, to set aside the verdict as contrary to the law and the evidence was properly overruled.

For the reasons stated, the judgment of the circuit court will be affirmed.

*Affirmed.*