# Richmond

## OLD DOMINION STEAMSHIP COMPANY V. BLAKEMAN.

### January 20, 1921.

1. CARRIERS.—*Interstate Commerce—Rates Filed With Interstate Commerce Commission.*—Where a steamship company filed its tariff rates with the Interstate Commerce Commission, and otherwise complied with the acts of Congress and the regulations of the Interstate Commerce Commission regulating interstate shipments, the shipper as well as the carrier was bound to take notice of the filed tariff rates and so long as they remained operative they were conclusive as to the rights of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing.

2. CARRIERS.—*Bill of Lading as Contract of Shipment.*—Ordinarily, a bill of lading issued by the carrier and accepted by the shipper becomes the contract of shipment of the parties subject to the rules governing other contracts, provided such a contract is not forbidden by law. It merges and supersedes all prior and contemporaneous oral agreements.

3. CARRIERS.—*Bill of Lading—Contract Contrary to Law.*—In order for a bill of lading to become a contract between the carrier and the shipper, the contract must be one which the parties have a right to enter into. If the contract is one forbidden by law, the bill of lading is void. No rights grow out of it and no obligations are imposed by it. The status of the parties is the same as if it had never been entered into.

4. CARRIERS.—*Bill of Lading—Contract Contrary to Law—Limiting Valuation by Mistake—Case at Bar.*—In the instant case there was no intent or attempt to evade the law or do anything contrary to the law, but by mistake on the part of the defendant carrier's agent a bill of lading was issued to the plaintiff, describing the goods shipped as household goods instead of furs, charging a lower rate than that on furs, and fixing an improper release valuation.

   *Held:* That the issuance of the bill of lading did not estop defendant carriers from claiming the legal rate, nor did its acceptance estop the plaintiff from claiming such damages for loss of the goods as he would have been entitled to if the goods

had been correctly described and the legal rate had been charged therefor.

5. CARRIERS.—*Bill of Lading—Contract Contrary to Law—Limiting Valuation by Mistake—Rules Filed With Interstate Commerce Commission—Case at Bar.*—In the instant case, the bill of lading was in the standard form; the only error being in the misdescription of the goods and the rate therefor, and in fixing a release valuation. Both parties were chargable with notice of, and are bound by, the filed tariff rate, and their rights and obligations were measured thereby. The mistake in the description of the goods, the rate charged, and the amount fixed as the release valuation did not, under the circumstances, change these rights and obligations, and neither is estopped by the bill of lading from asserting rights arising under the interstate commerce act.

6. INSTRUCTIONS.—*Repetition.*—There is no error in refusing an instruction where the point is sufficiently covered by another given instruction.

7. APPEAL AND ERROR.—*Exceptions and Objections—Answer to Question not Given.*—Where exception is taken to the action of the trial court in permitting a witness to answer a question, the bill of exceptions does not disclose error where the answer of the witness is not given.

Error to a judgment of the Circuit Court of Gloucester county in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. Boyd Sears* and *J. D. Hank, Jr.,* for the plaintiff in error.

*Wm. C. L. Taliaferro,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This action was brought to recover the value of two boxes lost in interstate shipment, the contents and value of which are as follows:

| | |
|---|---:|
| One leopard skin coat | $ 185.00 |
| On beaver skin coat | 400.00 |
| One bear skin rug | 50.00 |
| One skunk muff and stole | 50.00 |
| One black fox muff and stole | 80.00 |
| One lot of books | 60.00 |
| One violincello | 300.00 |
| Four Oriental rugs | 165.00 |
| Two sofa pillows | 10.00 |
| Total | $1,300.00 |

There was but little conflict in the testimony, and what conflict there was was removed by the verdict of the jury, who are the sole judges of the weight to be given the testimony. Viewing the case from this standpoint, the facts are as follows:

The Old Dominion Steamship Company is a transportation company doing intrastate and interstate business. On March 26, 1917, the plaintiff delivered to the steamship company, at a wharf in Virginia, the two boxes aforesaid, to be transported to a point in Montana. He reached the wharf too late to obtain a bill of lading for the boxes, but had them loaded on one of the company's steamers and took passage thereon himself. After getting on board he notified the purser that he had the two boxes on board, and desired to ship them to the designated point in Montana and to prepay the freight thereon. The purser stated to him that he did not know what the freight charges would be on the connecting lines, and hence could not issue a bill of lading until he reached Norfolk, where he could get the necessary information. The plaintiff gave the purser a general description of the contents of the boxes as containing furs, a violincello, books, rugs, etc., but did not give the number of each kind, nor was any valuation asked or given. Neither was any mention made by either party

of a higher or lower freight rate based upon a higher or lower valuation, or limited liability. The purser prepaid the freight and mailed the bill of lading to the plaintiff, who received the same two or three weeks after the date of shipment. The plaintiff promptly remitted the freight to the purser. The plaintiff testified that when he received the bill of lading, he did not examine it particularly, but noticed that the boxes were described as "2 boxes of H. H. goods," but he presumed that that was the company's method of designating goods of the character which he had delivered to the purser. He did not at that time observe the clause limiting the amount of liability.

On May 22, 1917, the plaintiff sent a telegram to the agent at Dixondale, Va., stating that the purser was to ship the boxes, but they had not been received, and requesting that he would "ask about them and have him send tracer." When the same goods were shipped from Montana to Virginia in the fall of 1916, they were about five and a half months on the road, and after waiting about that length of time after March 26, 1917, the plaintiff put in a tracer with the Chesapeake and Ohio Railway Company, referring to the bill of lading to describe and identify the shipment. Getting no results, he filed a claim with the purser on a form furnished by the agent at Big Timber, Montana, December 10, 1917. The purser reported that this claim had been lost, and the plaintiff filed a second claim on or about January 10, 1918, with the Old Dominion Steamship Company. The plaintiff further testified: "When I became anxious about the shipment, about five and a half months after the date of shipment, I examined the bill of lading carefully for the first time, and was surprised to notice a release valuation of $10.00 per hundredweight, as I had never put any valuation on the shipment at all, and none had been mentioned by either Mr. Sigmund (the purser) or myself. I had never agreed to this re-

27

lease valuation, or to a description of the goods as 'household goods.' It was a straight shipment and nothing was said as to conditions or limitations of any kind." He said nothing about the rate at that time, as the time had elapsed for the goods to arrive, and he did not see how he could accomplish anything by calling attention to it at that time. He retained the bill of lading without objection until December 1, 1918, a few days after this motion was instituted, when he offered to pay the additional freight, but the offer was declined.

The rate of freight on furs by themselves, or when packed with other goods, was sixty-nine cents; on household goods it was twenty-six cents. The goods were lost in transit, and this action was brought to recover their value. There was a judgment in the trial court in favor of the plaintiff for the full value of the goods, and to that judgment a writ of error was awarded by this court.

Several errors are assigned by the plaintiff in error, but it will not be necessary to notice them severally, as they will, for the most part, be settled by the determination of the principles of the case.

[1] It is not questioned that the steamship company filed its tariff rates with the Interstate Commerce Commission, and otherwise complied with the acts of Congress and the regulations of the Interstate Commerce Commission, regulating interstate shipments. Under these circumstances, "the shipper as well as the carrier is bound to take notice of the filed tariff rates, and that so long as they remain operative they are conclusive as to the rights of the parties, in the absence of facts or circumstances showing an attempt at rebating or false billing." *Atkinson, etc., Ry. Co.* v. *Robinson,* 233 U. S. 173, 180, 34 Sup. Ct. 556, 558 (58 L. Ed. 901). It is not pretended that there was any attempt at rebating or false billing in this case, nor is it claimed that there was any parol contract,

departing from the schedules and rates filed with the commission, which has supremacy over the bill of lading; nor is it claimed that the purser was the agent of the shipper in obtaining the bill of lading. The shipper claims that he applied to the purser as the agent of the carrier to give him a bill of lading for two boxes, containing furs, rugs, books, a musical instrument, etc. He admits notice of the filed tariff rates, and that both he and the carrier are bound by them, but says that the carrier, from negligence or other cause, issued to him a bill of lading which misdescribed the goods, charged the wrong rate, and fixed an improper release valuation. The plaintiff never asked for, and the steamship company could not lawfully give, anything but the standard bill of lading. No other bill of lading was in contemplation of the parties. Neither did the plaintiff ask for any particular classification of his goods, nor for rates of any kind. Indeed, there was but one rate for goods of the kind described by him, and for goods of that class the published tariffs of the defendant fixed no release value. It is true that the purser testified that the plaintiff did not tell him that the boxes contained valuable furs, but the plaintiff testified that he did. The verdict of the jury settled this conflict of the testimony in favor of the plaintiff, and we must so hold. We need not enter upon any discussion of what would have been the result if the plaintiff had failed to disclose the character of the goods, and had asked for and obtained just such a bill of lading as was issued. Such is not this case. As we are to view the evidence, the plaintiff disclosed the character of the goods, but not their value, and asked for a standard bill of lading at the published rates. What has happened in this case is that a mistake has been made in the description of the goods shipped, the rate charged, and the release valuation fixed. According to the plaintiff's testimony, which the jury has accepted, he was in no wise at fault

for this.   He in no way sought to evade the law, but disclosed the character of his goods and asked for such a bill of lading and at such a rate of carriage as he was entitled to.   The mistake was that of the carrier's agent.

[2-5]   Ordinarily, a bill of lading issued by the carrier and accepted by the shipper becomes the contract of shipment of the parties subject to the rules governing other contracts, provided such a contract is not forbidden by law.   It merges and supersedes all prior and contemporaneous oral agreements.   But to have such effect, it must be a contract which the parties have a right to enter into. If the contract is one forbidden by law, it is void.   No rights grow out of it, and no obligations are imposed by it. The status of the parties is the same as if it had never been entered into.   In the instant case, there was no intent or attempt to evade the law or to do anything contrary to law, but by mistake and misapprehension on the part of the defendant's agent, a bill of lading was issued to the plaintiff, which is forbidden by law.   The rate for furs was sixty-nine cents, but the purser designated them as "household goods" and issued a bill of lading therefor at twenty-six cents. Under the facts of this case, the issuance of the bill of lading does not estop the defendant from claiming the legal rate, nor does the acceptance thereof estop the plaintiff from claiming in this action such damages as he would have been entitled to recover if the goods had been correctly described and the legal rate had been charged therefor. The bill of lading was in the standard form, the only error being in the misdescription of the goods and the rate therefor, and in fixing a release valuation.   Both parties were chargeable with notice of, and are bound by, the filed tariff rate, and their rights and obligations were measured thereby.   The mistake in the description of the goods, the rate charged, and the amount fixed as the release valuation, did not, under the circumstances, change these rights and obli-

gations, and neither is estopped by the bill of lading from asserting rights arising under the interstate commerce act. Notwithstanding the bill of lading, the defendant may and should collect the correct amount of freight, as fixed by the filed tariff rate. *Texas Pac. R. Co.* v. *Mugg,* 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; *Atlantic, etc., R. Co.* v. *Virginia Mining Co.,* 119 Va. 5, 89 S. E. 103. It is a right imposed by law and a right which it cannot waive. *Georgia, etc., R. Co.* v. *Blish Milling Co.,* 241 U. S. 192, 36 Sup. Ct. 541, 60 L. Ed. 948. Equally so, the plaintiff may recover the value of his goods. The parties should stand on the same footing as if the goods had been correctly described and the proper rate charged for that class of goods when no value was declared.

In *New York Central Railroad Co.* v. *Goldberg,* 250 U. S. 85, 39 Sup. Ct. 402, 63 L. Ed. 857, a box of furs of the value of $693.75, plainly marked with the name and address of the consignee, and the word "Furs" conspicuously displayed thereon, was shipped by a fur manufacturer from New York city to Cincinnati. It was delivered to a local expressman whose driver delivered it to the defendant, and made out a bill of lading which the defendant signed. The bill of lading described the box as "1 case D. G.," which admittedly meant "Dry Goods." This misdescription was the driver's mistake, not made with intent to fraudulently misrepresent the nature of the merchandise. The carrier's clerk who signed the bill of lading relied wholly upon the representations of the driver as to the contents of the case, not seeing the case itself. At that time the filed tariff rates provided a first class rate for dry goods of sixty-five cents per 100 lbs., and double first class rate of $1.30 per 100 lbs. for furs. As a result of the misdescription in the bill of lading, freight was charged at the smaller rate applicable to dry goods, instead of the higher one applicable to furs. No valuation was placed upon the goods and no

question of limitation of liability to a stipulated value was presénted. One of the provisions of the bill of lading was, that if upon inspection it was ascertained that the articles shipped were not those described in the bill of lading, the freight charges should be paid upon the articles actually shipped. It was held that the misdescription in that case did not bar the shipper from recovering the full amount of the value of the goods. The carrier contended that there was no liability for loss of the furs because the goods were not the same but a different class from those described in the bill of lading, and for which a higher rate was established by its schedules. Mr. Justice Pitney, delivering the opinion of the court, said: "Were there otherwise any difficulty in answering this contention, it would be wholly relieved by the fact that the precise contingency was anticipated in the preparation of the form of the bill of lading, and provided for by one of its conditions, which reads as follows: 'The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery. If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped.'"

In the case at bar, it is nowhere said, or intimated, that the plaintiff was guilty of any fraudulent conduct, but the defendant rests its defense chiefly on the ground that the bill of lading is a contract, and the plaintiff is bound by its terms. In the case just cited there was also a bill of lading, and yet the plaintiff was allowed to recover the full value of the goods. Here, as there, the bill of lading provides that "If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped." In both cases the standard bill of lading was issued. Without further discussion, it is enough to say

that the instant case is controlled by the case of *New York Central R. Co.* v. *Goldberg, supra.*

[6] It is also insisted that the plaintiff is barred of recovery because his claim was not filed within six months after a reasonable time for the delivery of the goods, and that the trial court erred in refusing to give defendant's instruction A. The point was sufficiently covered by plaintiff's instruction No. 1, given by the court, and there was no error in refusing said instruction A. *DuPont Co.* v. *Snead,* 124 Va. 177, 97 S. E. 812.

[7] Exception was also taken to the action of the trial court in permitting the plaintiff to answer the following question on his examination in chief: "What were the terms of his contract at the time of the delivery of the two boxes to R. H. Sigmund, purser?" The answer of the witness is not given. The bill of exception, therefore, does not disclose error. *Union Central Life Ins. Co.* v. *Pollard,* 94 Va. 146, 157, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715.

The judgment against the defendant should be credited by the additional freight to which the defendant is entitled, to-wit, five dollars and forty-two cents. The judgment will be amended by crediting it with that sum, as of December 10, 1917, and as amended affirmed.

*Affirmed.*