Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Russell and Koontz, S.JJ.

ROBERT P. BENNETT

                                    OPINION BY
v.  Record No. 100199        JUSTICE LEROY F. MILLETTE, JR.
                                    June 9, 2011
SAGE PAYMENT SOLUTIONS, INC.

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Jan L. Brodie, Judge

     In this appeal, the primary issue we consider is whether

an employee's repudiation of an employment agreement can be

used by the employer as a defense against a breach of contract

claim.  We hold that a party's repudiation of future

obligations under a contract, even after performance has begun,

may constitute a defense to a breach of contract claim.  We

also address issues concerning repudiation as a matter of law,

amendment of the pleadings to conform to the evidence, and jury

instructions.

                  I. Facts and Proceedings Below

     In February 2008, Bennett was promoted to the position of

President of Sage Payment Solutions, Inc. ("Sage"), and the

parties entered into an Executive Employment Agreement

("Agreement").  Under the Agreement, Bennett was to earn a

yearly salary of $360,000.  The Agreement, which was for an

initial term of one year with automatic renewals for successive

one-year terms, also contained two other provisions relevant to

this appeal.  The Agreement's termination provision provided

Bennett with severance benefits consisting of a year's salary plus bonuses and other benefits unless Bennett resigned without "good reason" as defined in the Agreement or was terminated by Sage for good cause. In addition, the Agreement contained a "non-competition" clause restricting Bennett's employment for a period of twelve months after his employment ended.

On June 7, 2008, following oral discussions with Sage about his compensation, Bennett wrote in an email to Sage that he would require increased compensation to the $1 million range, "or we agree to my transition out of the company." In that email, Bennett also stated that if his compensation demands could not be met, then

> we can work out a mutually agreeable transition plan. Perhaps the best approach would be to have me stay on in my current position or as a consultant while you are searching for or selecting a replacement from within. In either event, I will want the clock running on any post termination restrictions listed in my employment agreement.

When Sage did not meet his compensation demands, Bennett continued in the position of President but openly pursued other employment opportunities as he worked with Sage on this "mutually agreeable transition plan." Sage told Bennett that it considered his email to constitute a resignation, and not merely a request for a higher salary. Bennett disagreed and stated that he considered Sage's refusal of his compensation

demands to be a termination of his employment. Bennett's employment was ultimately terminated on September 30, 2008.

Bennett filed a complaint against Sage seeking severance payments due under the Agreement. On the third day of a jury trial, prior to the close of Bennett's case-in-chief, Sage moved for leave to amend its pleadings to include a defense of repudiation. Bennett objected, arguing that "[a]ccording to the definition of repudiation," the facts of his performance do not support it, because Bennett continued to work and continued to perform his duties under the Agreement after he sent the June 7, 2008 email. The circuit court, nonetheless, granted Sage's motion to amend and submitted the issue of repudiation to the jury. After the issue was submitted to the jury and the jury posed two questions concerning the instruction on repudiation,[1] Bennett requested that the circuit court issue the jury an additional instruction to clarify the definition of repudiation. The court refused to give such an instruction,

_____

[1] Jury Instruction N states:

> If you find that Mr. Bennett repudiated or rejected the Executive Employment Agreement by conditioning his performance of his duties on the Company's acceptance of such changes beginning in May 2008, then you may not find [Sage] liable for breach of contract for its subsequent rejection of his demand for severance pay.

3

stating that Bennett had agreed to the instructions that were previously given to the jury.

After the jury returned its verdict in favor of Sage, Bennett moved to set aside the verdict, arguing that "the evidence does not support a finding that [he] clearly and unequivocally repudiated the entire performance of the contract." The circuit court denied Bennett's post-trial motions, and he timely filed his appeal to this Court.

## II. Standard of Review

We review this appeal under well-settled principles.

> "When parties come before us with a jury verdict that has been approved by the trial court, they hold the most favored position known to the law. The trial court's judgment is presumed to be correct, and we will not set it aside unless the judgment is plainly wrong or without evidence to support it. We view the evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party at trial." We review matters of law de novo.

Syed v. ZH Technologies, Inc., 280 Va. 58, 68, 694 S.E.2d 625, 631 (2010) (internal citations omitted).

We review a circuit court's grant or denial of a party's motion for leave to amend its pleadings, based on a variance between the evidence and the pleadings, on an abuse of discretion standard. We have explained:

> In a case of variance, Code § 8.01-377 gives a trial court the discretion to apply the foregoing rule reasonably either by permitting amendment of the pleadings (and possibly postponing the trial) or, in

4

> lieu of amendment, by having the facts determined and rendering judgment, but only on the condition that no prejudice results.  While the statute is remedial in purpose and should be liberally construed, it should not be interpreted in a manner inconsistent with its plain language.

Hensley v. Dreyer, 247 Va. 25, 30, 439 S.E.2d 372, 375 (1994) (citations omitted) (holding that "the trial court abused its discretion by concluding, in a manner inconsistent with the statutory language, that the variance 'could not have prejudiced'" the appellant).

Additionally, upon review of the substance of jury instructions given by a circuit court,

> our responsibility is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.  [A] litigant is entitled to jury instructions supporting his or her theory of the case if sufficient evidence is introduced to support that theory and if the instructions correctly state the law.  The evidence introduced in support of a requested instruction must amount to more than a scintilla.

Williams v. Cong Le, 276 Va. 161, 166, 662 S.E.2d 73, 76 (2008) (internal citations and quotation marks omitted).

### III. Repudiation of a Contract

Repudiation may be asserted as a valid defense to a breach of contract claim in Virginia.  The United States Court of Appeals for the Fourth Circuit, applying Virginia law, has recognized that

> in the case of a bilateral contract for an agreed exchange of performances, a repudiation of his duty by one of the parties terminates the duty of the

5

other.  It gives to the latter the legal privilege of refusing to render the return performance; <u>if sued for such refusal, the plaintiff's repudiation is a good defense</u>.

<u>WRH Mortgage, Inc. v. S.A.S. Assocs.</u>, 214 F.3d 528, 532 (4th Cir. 2000) (emphasis added) (citation and internal quotation marks omitted).  We agree with the holding in <u>WRH Mortgage</u> that repudiation may be used as a defense to a breach of contract claim.

The question presented now becomes whether the court erred by allowing Sage to assert repudiation as a defense to Bennett's breach of contract claim based on Bennett's demand for increased compensation or his "transition out of the company," after he had already begun performance under the Agreement.  While we acknowledge the line of Virginia cases that characterizes repudiation before performance is due under a contract as an anticipatory breach, we hold that repudiation may also apply to a contract that has been partially performed, when future obligations under the contract are repudiated.  <u>See</u> <u>Lenders Financial Corp. v. Talton</u>, 249 Va. 182, 189, 455 S.E.2d 232, 236-37 (1995) ("[B]ecause defendant's repudiation of this executory contract constitutes an anticipatory breach, plaintiff may sue on the contract without waiting for the time of defendant's performance to arrive"); <u>Link v. Weizenbaum</u>, 229 Va. 201, 203, 326 S.E.2d 667, 668-69 (1985) (holding that

although the defendant clearly repudiated before performance of the contract commenced, "his repudiation could not serve as the basis for a claim of breach of contract because his co-obligor did not join in the repudiation either expressly or by assent").

Our holding in this case is supported by our decision in Board of Supervisors of Fairfax County v. Ecology One, Inc., 219 Va. 29, 245 S.E.2d 425 (1978). In Ecology One, we applied an anticipatory breach theory to a factual scenario in which performance under a contract had already begun. There, the contract for the construction of public streets and drainage facilities was formed in May 1973, and performance under that contract was underway as of October 1974 but an inspection revealed that the contractor's "work had come to a complete halt" in the early months of 1975. Id. at 31, 245 S.E.2d at 427. We held that the contractor had repudiated because it "abandoned its contract," and we reversed the circuit court's decision that the County had not made out a prima facie case for anticipatory breach. Id. at 33-34, 245 S.E.2d at 428.

In Ecology One, the contractor's obligations required continuous performance over a period of time. Id. at 31, 245 S.E.2d at 426. The evidence justified the jury's conclusion that the contractor had abandoned the contract. Id. at 33, 245 S.E.2d at 428. We stated that "the abandonment of a contract

7

will give rise to an action for anticipatory breach." Id. In reaching this decision, we properly recognized that a party's abandonment of his or her contractual duties under a continuous performance contract, after performance has commenced, constitutes an anticipatory repudiation. The same result applies in this case.

Our view is also supported by case law from the United States Supreme Court. In Franconia Assocs. v. United States, 536 U.S. 129 (2002), for example, the Supreme Court applied repudiation principles to a factual scenario in which a party repudiated after performance had commenced. There, certain property owners agreed to devote a portion of their properties to low- and middle-income housing in exchange for low interest mortgage loans issued by the government. Id. at 132-33. The owners' promissory notes allowed prepayment of the loans. Id. at 133. But a subsequent act of Congress placed permanent restraints on the prepayment of the owners' loans. Id. The owners filed suit against the government arguing that the act "effected . . . a repudiation of their contracts." Id. The Supreme Court agreed with the owners and held that the act "qualified as a repudiation of the parties' bargain." Id. at 133, 143. In so holding, the Court stated that "the promisor's renunciation of a 'contractual duty before the time fixed in the contract for . . . performance' is a repudiation." Id. at

8

143 (quoting 4A Corbin on Contracts § 959, at 855 (1951)

(emphasis in original).

The Restatement (Second) of Contracts also supports the

view that a party may repudiate his or her contractual duties

after performance has commenced.  Section 250 defines

"repudiation" as:

> (a)  a statement by the obligor to the obligee
> indicating that the obligor will commit a breach that
> would of itself give the obligee a claim for damages
> for total breach . . . or
> (b)  a voluntary affirmative act which renders the
> obligor unable or apparently unable to perform
> without such a breach.

Restatement (Second) of Contracts § 250 (1981).  Thus, the

Restatement's definition does not provide that repudiation must

occur prior to the commencement of any performance under the

contract.

When a contract requires performance continuously for some

period of time, a party's renunciation of his or her

contractual obligation may constitute a repudiation.  Arthur L.

Corbin, 9 Corbin on Contracts § 954, at 738 (interim ed. 2002)

(section entitled "Breach by Repudiation of Obligation").  In

such cases, the repudiation of the contractual obligation is

"anticipatory with respect to the performances that are not yet

due."  Id.

In sum, we hold that a party's renunciation or abandonment

of his or her contractual duties, after performance has

commenced under a contract requiring continuous performance, constitutes a repudiation, which may be treated by the party to whom the duty is owed as an anticipatory breach of the contract. Therefore, the issue of Bennett's alleged repudiation was properly before the jury.

### IV. Bennett's Repudiation

In his June 7, 2008 email to Sage, Bennett communicated his dissatisfaction with his salary:

> [W]hile I would enjoy recommitting to Sage, the inequity between my current compensation and what I think my value is on the outside is substantial. With that in mind, I am suggesting that either my compensation be altered to something more in line with my value, albeit discounted, or we agree to my transition out of the company.

Bennett asserts that his communication with Sage was simply an invitation to negotiate, and that it clearly indicates his preference to stay with the company. He argues that his language did not evince a clear and unequivocal repudiation of the Agreement covering the entire contract because he also agreed to stay on for a period of time while he transitioned out of the company. But, while transitioning out of the company, he expected the twelve-month time frame restricting his employment under the non-competition clause, which he referred to as the "clock," to be "running."

In response, Sage argues that there was ample evidence by which the jury could find that Bennett had repudiated the

10

contract.  According to Sage, testimony at trial included statements attributed to Bennett during a June 5th conversation that July 1, 2008 was his "drop dead date" for his departure and that he had effectively given notice of his resignation. Also, Sage argued that Bennett never suggested that there was a third alternative to his receiving a higher salary or leaving Sage.  Finally, Sage contends that Bennett never suggested that he would be willing to continue in his position at his current salary of $360,000 and that he suggested his own departure date.

We have held that "[i]t is firmly established that for a repudiation of a contract to constitute a breach, the repudiation must be clear, absolute, unequivocal, and must cover the entire performance of the contract."  Vahabzadeh v. Mooney, 241 Va. 47, 50, 399 S.E.2d 803, 805 (1991) (citations omitted); see also Restatement (Second) of Contracts § 250 (repudiation entails a statement or "voluntary affirmative act" indicating that the promisor "will commit a breach" when performance becomes due).

In this case, when Bennett told Sage, four months into his year-long contract, that he would leave the company unless his demand for increased compensation was met, the jury could have found that Bennett repudiated his obligation under the Agreement.  Bennett's repudiation would have been anticipatory

11

with respect to the remainder of the time he agreed to serve as Sage's president under the Agreement. If Sage could not rely upon Bennett's repudiation, it could not begin its search for his replacement until the day that Bennett simply failed to show up for work and notified Sage that he would no longer perform under the Agreement. Because the Agreement required continuous performance over a period of time, when Bennett declared he would leave his position as president unless his compensation was increased, Sage was entitled to rely on Bennett's repudiation and treat it as a breach.

Therefore, we hold that the circuit court did not err in rejecting Bennett's argument that he did not repudiate the contract as a matter of law, because he continued to perform his duties as he was attempting to negotiate his exit from the company. Based on the evidence presented, the jury was entitled to conclude that Bennett's refusal to consider any alternative other than almost tripling his salary and his demand that his post-termination non-compete obligations begin running immediately constituted a repudiation by Bennett of his future obligations under the one-year contract.

V. Variance Between Evidence and Allegations

Bennett contends that the circuit court abused its discretion by allowing Sage to amend its defensive pleadings to include a defense of repudiation. We disagree.

12

In determining whether the circuit court erred by permitting Sage to include a defense of repudiation in its pleadings, the issue is whether Bennett was "prejudiced" by the amendment. Code § 8.01-377.[2] Furthermore, this Court has held:

> [w]e adhere to the principle that a court may not base a judgment or decree upon facts not alleged or upon a right, however meritorious, that has not been pleaded and claimed. Every litigant is entitled to be told in plain and explicit language the adversary's ground of complaint. Like any other rule, however, this principle must be reasonably applied, keeping in mind that its purpose is to prevent surprise.
>
> In a case of variance, Code § 8.01-377 gives a trial court the discretion to apply the foregoing rule reasonably either by permitting amendment of the pleadings (and possibly postponing the trial) or, in lieu of amendment, by having the facts determined and rendering judgment, but only on the condition that no prejudice results. While the statute is remedial in purpose and should be liberally construed, it should not be interpreted in a manner inconsistent with its plain language.

Syed, 280 Va. at 71, 694 S.E.2d at 632 (internal citations omitted).

Sage moved to amend its answer to include the defense of repudiation prior to the close of Bennett's case-in-chief.

---

[2] Code § 8.01-377, entitled "Remedy when variance appears between evidence and allegations," states in relevant part:

> If, at the trial of any action, there appears to be a variance between the evidence and the allegations or recitals, the court, if it consider that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended.

According to Sage, the evidence presented during Bennett's case-in-chief added support to its repudiation defense. Specifically, Sage notes that Bennett testified that he had not been involuntarily terminated by Sage, further evidencing that he instituted the termination of the Agreement. The court granted Sage's motion to amend, stating:

> I think the facts were both known to both sides that the argument is already pretty much laid out even already the way we have been proceeding and has been in the pleadings that I have seen. In light [of the fact] that I don't believe it is prejudicial I am going to allow the amendment at this point, to allow them to argue repudiation at this point.

Bennett's own testimony, offered during his case-in-chief, established facts which supported Sage's repudiation defense. Substantial justice was promoted by instructing the jury how to properly frame the issues based on the evidence presented at trial. Bennett's argument that he was prejudiced by the amendment is without merit because the evidence supporting Sage's repudiation defense was not only known to Bennett, but also offered by Bennett himself. Therefore, we hold that the circuit court did not abuse its discretion in allowing Sage to amend its answer to include a repudiation defense.

## VI. Clarifying Instruction

Bennett argues that the circuit court erred in refusing to give the jury an instruction to clarify the definition of repudiation. We disagree.

14

As previously stated, although he objected to sending the issue of repudiation to the jury, Bennett did not object to Sage's proposed jury instruction on repudiation. Furthermore, when the jury asked for clarification about the instruction regarding repudiation, Bennett agreed that the circuit court should simply instruct the jury to rely on the plain language of the instruction. Bennett waited until after the jury returned to deliberate to ask the court for a clarifying instruction regarding the definition of repudiation. Under these facts, when Bennett agreed to the jury instruction given on repudiation, and only asked the court to issue a clarifying instruction after the jury returned to deliberate, we hold that the circuit court did not abuse its discretion in refusing to issue Bennett's proposed clarifying instruction. See E.I. DuPont De Nemours & Co. v. Snead, 124 Va. 177, 187, 97 S.E. 812, 815 (1919) (holding it is not error for a circuit court to refuse an instruction after the jury has already been sufficiently instructed on that issue).

## VII. Conclusion

For the reasons stated, we hold that the circuit court did not err in submitting the issue of repudiation to the jury, in allowing Sage to amend its pleading to include the defense of repudiation, in refusing to issue the jury a clarifying instruction, and in refusing Bennett's motion to set aside the

15

verdict.  Accordingly, we will affirm the judgment of the circuit court.

<u>Affirmed.</u>