# Richmond

## PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY v. GEORGE W. WALKER.

May 1, 1950.

Record No. 3642.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Williams, Cocke & Turnstall* and *Lawson Worrell, Jr.*, for the plaintiff in error.

*James G. Martin & Sons and Tom E. Gilman*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

About thirty years prior to the institution of this proceeding, the Provident Life and Accident Insurance Company issued to George W. Walker a contract of insurance. The contract provided that, in consideration of periodic payments by Walker, the insurance company would pay to the insured $45 per month for total disability "resulting directly and exclusively of all other causes from bodily injuries sustained during the life of this policy, solely through External, Violent and Accidental Means, * * * for the period of total loss of time commencing on the date of

accident, during which such injury alone shall wholly and continuously disable and prevent the insured from performing any and every duty pertaining to his business or occupation."

Walker on November 10, 1948, instituted this action by notice of motion for judgment against the insurer for damages in the sum of $1,300, alleging that he had become "disabled on the 26th day of August, 1946," and that although he had performed and complied with all the conditions and stipulations of the above contract of insurance, the insurance company had failed and refused to pay him $45 per month as it had agreed.

Written interrogatories were propounded to Walker as to the date and cause of his injuries, and the names of his physicians and his labor foremen. Walker replied that: "The accident occurred in August, 1946, while employed by the Southern Railroad Company, and it occurred while within the scope of my employment, and I was totally disabled after August 26, 1946, and have not worked since. I suffered a broken leg and double hernia from the accident."

Pleas of general issue, release, and accord and satisfaction were filed by the defendant. Walker filed a replication alleging that the releases were obtained by fraud. The defendant also filed grounds of defense and amended grounds of defense.

At the beginning of the trial, during the examination of the first witness, the court allowed the plaintiff to amend his notice of motion so as to allege the date of the commencement of his total disability as August 15, 1946, instead of August 26, 1946.

After hearing the evidence and instructions of the court, the jury returned a verdict for the plaintiff, Walker, in the sum of $990, with interest from January 1, 1948. A motion of the defendant to set aside the verdict and grant a new trial, upon the ground that the verdict was contrary to the law and the evidence, was overruled by the trial court. We granted a writ of error.

The defendant assigns error to the action of the court in permitting the plaintiff to amend his notice of motion and to testify that the true, exact date of his accident and disability was August 15, 1946; in overruling its motion to strike the evidence at the close of plaintiff's evidence and at the close of all the evidence; in refusing its instructions numbered D-5, D-6, and D-12; and in refusing to set aside the verdict of the jury because of insufficiency of the evidence.

The jury having found a verdict for the plaintiff, the evidence should and will be stated in the light most favorable to the plaintiff.

George W. Walker, fifty-nine and one-half years old, is an uneducated man, unable to read, and barely able to write his name. He testified that he had been an employee of the Southern Railroad Company for forty years; that on August 15, 1946, at Hendersonville, North Carolina, while engaged in leveling steel rails on a flat railroad car, one of the rails rolled against his leg, breaking a bone in two or three places.

At this point in the proceeding, the defendant objected to the admission of testimony that the disability of the plaintiff occurred on August 15, 1946, because of its variance with the date given in the notice of motion for judgment and in the answer to the interrogatories. It contended that the date of the accident was a material point in the merits of the case, benefits being payable under the insurance contract only for disability "commencing on the date of accident," and that plaintiff was bound to strict proof of the allegations in his notice of motion.

Plaintiff's counsel stated that because Walker had been paid by the railroad company for his work until August 26, 1946, he had not claimed promptly for disability prior to that date. He asked leave to amend the notice of motion to show the date of the accident as August 15th. The court granted leave to so amend, over the objection of the defendant. The plaintiff and the court both stated that a continuance would be granted to the defendant if it de-

sired it. Defendant replied that a continuance would be of no benefit, and that it was prepared on the pleadings, the answer to the interrogatories, and the evidence, including some depositions, to proceed with the trial.

Walker thereafter testified that after he received the injuries described, he "crawled, got along across to the office of Dr. T. W. Sumner," distant about one-eighth of a mile; that Dr. Sumner bound and wrapped his leg with some boards and took him home in an automobile, where he remained a week at the least; that thereafter Dr. Sumner, his personal physician, gave medical treatment to his leg from time to time; that at the time of the accident he was working as a yardman, and no other person was present; that he promptly reported his injury to his foremen, telling them that he could not work any longer; that the foreman who kept his work time, nevertheless, reported him to the company as working, and the company paid his wages until August 26, 1946; that he had not been able to work at his occupation since August 15, 1946, and had been subsequently retired as a railroad employee and received compensation under the Railroad Retirement Act.

Walker made claim upon the insurance company for disability benefits. The insurer denied liability. However, it sent one of its agents, B. H. Taylor, of Asheville, North Carolina, to confer with the insured. Taylor visited Walker three times in the fall of 1946. Walker said that on his first visit, Taylor "wanted to buy the policy and I told him, 'No, I did not take the policy to sell;'" that Taylor told him, "Oh, it ain't no good any way," and went away; that Taylor came a second time and they were unable to come to an agreement; that Taylor came back the third time and asked him if he would take payments in quarterly installments, saying "I ain't got time to fool with you every month. I can't mess with you; but I can bring it by here quarterly, if you will take it that way;" that Taylor then said he would give him $200 to pay his medical bills and carry the monthly payments to January 1, 1947; that he

replied he would take the payments that way; that he was requested to sign some papers which he was unable to read; that Taylor read to him "a little bit of writing," but what he read did not purport to release the insurance company of further liability; and that he at no time agreed to settle his claim in full for $200.

Walker admitted his signature to three written instruments offered in evidence. One of these was a printed receipt for the payment of $200 by the insurer and the release by the insured of claim to indemnity for disabilities by reason of injuries received on or about "10, July, 1946." (The date was inserted in writing.) Another was a check for $200 which contained an acknowledgment of its receipt and a similar release of insurer, and the third was an affidavit written by pen, that the insured had not employed any attorney to assist him in collecting his claim. Walker was quite positive that none of these papers was read to him, and that he did not read any of them. He vigorously insisted that his signatures were obtained under a positive understanding with the representative of the insurer that, in addition to the $200 paid him, he was to receive his monthly benefits in quarterly payments after January 1, 1947.

Upon cross-examination, Walker said that he was in bed a part of the time from August 15 to August 26, 1946; that if the company's record showed he worked twenty-one days in August, 1946, prior to the 26th of that month, it was not correct for the reasons heretofore given by him; that his immediate superiors knew he could not work, and did not work, after August 15th; and that some of his superiors did not see him for a week at a time because they would be working farther down the railroad line.

Marvin J. Walker, twenty-seven year-old son of the insured, said he was present the last two visits of B. H. Taylor to his father; that Taylor brought a paper and a check, but did not read either to his father, who could not read; that he, Marvin, asked his father to let him read the paper but his father told him to keep his mouth out of it;

that Taylor told the insured that $200 "would pay him up until the first of the year; then he would come out and pay him. * * * said he did not want to fool with him, it was too much trouble coming out every month or sending checks out. It bothered the company;" and that his father then signed the papers and received the $200.

Mrs. Leona Walker, the wife of insured, said that her husband did not work after his accident; that she was present on Taylor's visits to her husband; that on the last occasion, Taylor told the insured that he had just as well sign the releases because, "The policy would not do him any good and he would not get anything out of it;" that after an argument between her husband, her son, and Taylor, Taylor agreed to give her husband $200 to pay him up for the time that was owing and promised "he would pay him quarterly the rest of the time." She corroborated her husband and son to the effect that the insured could not read, and said that Taylor read a few lines from a paper, which was "nothing like" either of the papers put in evidence.

Dr. J. A. Abbitt said he examined Walker in the latter part of 1947, and that he had a double disability due to a bilateral hernia and an old injury to his left leg; and that he thought even if he did not have the double hernia the injury to his leg would totally disable him for work on a railroad.

Dr. Louis A. McAlpine testified that he was requested by the insurer to examine Walker, and that on the 25th day of February, 1949, he found the latter suffering with a double hernia and an old fracture of his left leg, both of which conditions disabled him.

Walker admitted that he had suffered from a hernia for several years prior to August 15, 1946, which he said was the result of loading ties and rails, and that he had been treated several times by Dr. Sumner for that condition.

At the conclusion of plaintiff's evidence, the court over-

ruled a motion to strike the evidence, and the trial was resumed.

■ We do not think the court erred in refusing to strike the evidence.

The jury having found a verdict for the insured, it is unnecessary to set out, in detail, the evidence of the insurer in conflict with that of the plaintiff. It is sufficient to say that several witnesses, employees of the railroad, in depositions, taken after due notice but in the absence of the insured and his counsel, deny that they had notice of the accident alleged and the disability of Walker as of August 15, 1946.

Dr. Sumner, in his deposition, said that he treated Walker on July 10th, July 26th, August 3rd, August 26th, September 27th, and October 29th, all in 1946; that on July 10th, he found Walker suffering with a double hernia of long standing origin and a traumatic condition of his left knee and ankle several months old. He further said that after July 10, 1946, Walker did not report any additional injury and he did not find any additional injury sustained by Walker.

A clerk, having custody of the employment records of the railroad, said that the records recorded Walker as working twenty-one days in the month of August, 1946, and as leaving the employ of the railroad company on August 26th, 1946.

B. H. Taylor of Asheville, North Carolina, an agent of the insurer, testified in person. He said that he had known George W. Walker eighteen to twenty years and was aware of the fact that his company had issued to him an insurance policy; that upon Walker's claim for disability benefits, the insurer had denied all liability; that, however, he was requested by the insurer to confer with Walker; that he twice went to Walker's home, twenty-one miles from Asheville, and tried to make a compromise settlement, offering $100 for the surrender of the policy and the release of all liability of his company thereunder; that Walker, on each occasion, refused to make a settlement on the basis thereof;

that on November 14, 1946, he again went to Walker's home and told the insured that he had been able to get the insurer to agree to make a full, final and compromise settlement in the sum of $200; that he told Walker that he would not be given any money, except upon that basis, and if he thought he could get more not to accept it; that he offered the written release to Walker to read but the latter did not read it; that Walker said he "felt if that was all the money he was going to get he was not interested at all;" that he, Taylor, then read the release to Walker and Walker signed it; and that Walker also signed the affidavit and then accepted the check for $200.

Several character witnesses testified that the general reputation of Taylor for veracity was good.

There are three questions of law involved: the allowance of the amendment of the notice of motion, the refusal of the trial court to grant certain instructions, and the sufficiency of the evidence to justify a recovery by the insured.

Sections 6104, 6250 and 6409 of Virginia Code, 1942 (Michie), (8-119, 8-217 and 8-532 Code of 1950), and the numerous cases referred to in the notes thereto furnish abundant authority for the amendment of the notice of motion. These cases allow substantial amendments in the pleadings for the promotion of justice, and they have always been liberally construed as remedial in purpose. *Russell Lbr. Co.* v. *Thompson*, 137 Va. 386, 392, 119 S. E. 117; *Wood* v. *Quillin*, 167 Va. 255, 262, 188 S. E. 216; *Dillow* v. *Stafford*, 181 Va. 483, 488, 25 S. E. (2d) 330.

The answer of the insured to the interrogatories was that the accident occurred in "August 1946," and that he "was totally disabled after August 26, 1946." The insured explained why the latter date was erroneously stated in the notice of motion.

The amendment was germane to a material fact in controversy, the date of the accident which caused the disability of the insured. The change was allowed before the evidence of the plaintiff had been fully submitted, and merely pre-

vented a variance of fact between the evidence and an allegation or recital in the pleadings. Code of Va., 1942 (Michie), section 6250 (8-217 Code of 1950). After the amendment, it was still possible for the defendant to introduce evidence as to the new date or to have a continuance until such evidence could be produced. The defendant insurer refused to ask for or accept a continuance, and said a continuance would be of no benefit to it. It was not error to allow the amendment.

The jury were fully and clearly instructed on all of the aspects of the case under the respective theories of the parties. On behalf of the defendant, they were told "that no presumption of liability arose from the fact that Walker was issued a policy of insurance and was totally disabled;" that "the burden was upon the plaintiff to establish his right to recover under the terms and provisions of the policy of insurance by a preponderance of the evidence;" that unless they believed "from a preponderance of the evidence that Walker suffered his accident on August 15, 1946, and was totally disabled as a result thereof within twenty-four hours, the verdict should be for the defendant;" that "the papers executed by Walker on November 14, 1946, if valid, constituted a full and final release of all liability" of the insurer, unless they believed "from clear, positive and preponderating evidence that the defendant procured the plaintiff's signature to such papers by fraud," that "fraud is never presumed, but on the contrary, every person is presumed to have acted in a lawful manner unless and until the contrary is established by clear and convincing proof;" and that even though they believed "from the evidence that Walker executed the papers dated November 14, 1946, without reading them or having them read to him, it was his duty to take proper precautions himself and of his own motion to read the papers or have them read to him, and if he chose to sign the same without taking such precautions, he did so at his own peril," and was bound thereby, unless the jury believed "from a clear and satisfactory pre-

ponderance of the evidence that he was induced to so sign the papers by misrepresentations fraudulently made by B. H. Taylor."

Instructions D-5 and D-6 directed a verdict for the defendant and ignored the question of fraud as to the release. Instruction D-12 also ignored the question of fraud and misrepresentation. Instructions D-5, D-6 and D-12 were amply covered by other instructions granted.

There are but two material questions of fact, one relating to the date when Walker incurred his disability and the other relative to the fraud alleged to have been practiced in securing the releases from the insured. The evidence is highly conflicting on both questions.

Fairly clean-cut questions of fact are presented by the evidence. There is no question of total disability of the insured and his coverage under the contract, if he was injured on August 15, 1946.

There is nothing inherently incredible in Walker's testimony as to the date of his disability. If true, and the jury found it to be true, it established a material fact supporting a recovery by the insured.

If the insured was disabled on August 15, 1946, there remained only the question of fraud in obtaining the releases from the liability thereby incurred. Only stupidity, ignorance, or fraud could explain the release of liability for the monthly payments of $45, in consideration of a single payment of $200.

We cannot say that the testimony of the plaintiff, his wife and son that the insured was induced to sign the releases by false statements and promises of the insured's agent is contrary to human experience. Fortunately, fraud of this character is unusual; but there are many reported cases in which it has appeared.

The jury saw and heard the plaintiff, his wife and son and Taylor, the agent of the insurer, each testify in person. They had the right, under the circumstances which developed, to believe or disbelieve any of them. They accepted

the version of the plaintiff as true and the trial court refused to disturb their verdict. The evidence presented typical questions for the decision of a jury. While evidence of fraud and imposition in a case of this character must be clear and convincing, it does not follow, because of contradiction, that the court can fairly take the question from the jury merely for the reason that it might, sitting as a juror, have reached a different conclusion. This ought only to be done where the evidence is clearly insufficient to support a different conclusion. *Ferries Co.* v. *Brown*, 121 Va. 13, 92 S. E. 813; *Flowers* v. *Virginian Ry. Co.*, 135 Va. 367, 116 S. E. 672; *Stallard* v. *Atlantic Greyhound Lines*, 169 Va. 223, 232, 192 S. E. 800.

The factual questions,—the date of the disability incurred by Walker and the validity of the releases of the insured,—having been properly submitted to the jury, their finding in favor of the plaintiff is binding on this court.

We find no error in the judgment complained of, and it must be affirmed.

*Affirmed.*