COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Senior Judge Annunziata
Argued at Alexandria, Virginia


LEESBURG IMPORTS, L.L.C., t/a
  LEESBURG HONDA
                                            MEMORANDUM OPINION[*]  BY
v.      Record No. 1916-07-4          JUDGE ELIZABETH A. McCLANAHAN
                                                  JUNE 10, 2008
D.B. SMIT, COMMISSIONER, VIRGINIA
  DEPARTMENT OF MOTOR VEHICLES AND
  AMERICAN HONDA MOTOR COMPANY, INC.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

William T. Lehner (Andrew Biondi; S. Vernon Priddy III; Sands
Anderson Marks & Miller, on briefs), for appellant.

Erik K.G. Fiske, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee D.B. Smit,
Commissioner, Virginia Department of Motor Vehicles.

Steven A. McKelvey, Jr. (Philip B. Morris; Lauren E. Hutcheson;
Nelson Mullins Riley & Scarborough, LLP; Morris & Morris, PC,
on brief), for appellee American Honda Motor Company, Inc.


Leesburg Honda appeals from the trial court's order upholding the Commissioner's decision

denying Leesburg Honda a hearing to protest establishment of a new Honda dealership. We affirm

the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  Background

Pursuant to Code § 46.2-1569(4),[1] American Honda advised Leesburg Honda it had approved the establishment of a new Honda dealership at Stonecraft Center Court in Chantilly. Leesburg Honda filed a petition of protest with the Commissioner asserting that the proposed dealership, to be located 14.4 miles from Leesburg Honda, was within Leesburg's relevant market area (RMA).[2]  Leesburg Honda asserted it had a statutory right to protest the establishment of the

---

[1] Code § 46.2-1569(4) makes it unlawful for an automobile manufacturer

> [t]o grant an additional franchise for a particular line-make of motor vehicle in a relevant market area in which a dealer or dealers in that line-make are already located unless the franchisor has first advised in writing all other dealers in the line-make in the relevant market area.  No such additional franchise may be established at the proposed site unless the Commissioner has determined, if requested by a dealer of the same line-make in the relevant market area within thirty days after receipt of the franchisor's notice of intention to establish the additional franchise, and after a hearing on the matter, that there is reasonable evidence that after the grant of the new franchise, the market will support all of the dealers in that line-make in the relevant market area.

[2] "Relevant market area" is defined as follows:

> 1. In metropolitan localities, the relevant market area shall be a circular area around an existing franchised dealer with a population of 250,000, not to exceed a radius of 10 miles, but in no case less than seven miles.
>
> 2. If the population in an area within a radius of 10 miles around an existing franchised dealer is less than 250,000, but the population in an area within a radius of 15 miles around an existing franchised dealer is 150,000 or more, the relevant market area shall be that area within the 15-mile radius.
>
> 3. In all other cases the relevant market area shall be an area within a radius of 20 miles around an existing franchised dealer or the area of responsibility defined in the franchise, whichever is greater.  In any case where the franchise agreement is silent as to area of responsibility, the relevant market area shall be the greater of an area within a radius of 20 miles around an existing franchised dealer or that area in which the franchisor otherwise requires the franchisee to make significant retail sales or sales efforts.

proposed dealership and sought a hearing to determine whether the market would support all of the Honda dealers in the RMA. Leesburg Honda later supplemented its petition with a population study conducted by Technical Associates that analyzed the population within a 10-mile and 15-mile radius of Leesburg Honda. Using Census 2000 population data, the study indicated the population within a 10-mile radius was 170,671 and the population within a 15-mile radius was 436,797. Because the population was less than 250,000 within a 10-mile radius and more than 150,000 within a 15-mile radius, the RMA of Leesburg Honda was 15 miles under the Census 2000 statistics.[3] The study also indicated that if using the Claritas 2006 Estimated Population,[4] the population within 10 miles of Leesburg Honda was 263,275 and the population within 15 miles was 575,357. Since the population within 10 miles of Leesburg Honda exceeded 250,000, the RMA was between 7 and 10 miles.[5] The study concluded that Leesburg Honda's RMA should be based "on the more lenient of the two permissible population sources," the Census 2000 population.

---

> In determining population for this definition, the most recent census by the U.S. Bureau of the Census or the most recent population update, either from the National Planning Data Corporation or other similar recognized source, shall be accumulated for all census tracts either wholly or partially within the relevant market area.

Code § 46.2-1500.

[3] "If the population in an area within a radius of 10 miles around an existing franchised dealer is less than 250,000, but the population in an area within a radius of 15 miles around an existing franchised dealer is 150,000 or more, the relevant market area shall be that area within the 15-mile radius." Code § 46.2-1500(2).

[4] Claritas is the successor to National Planning Data Corporation and agreed by both parties to be a recognized source. Neither party disputed the reliability of this source.

[5] "In metropolitan localities, the relevant market area shall be a circular area around an existing franchised dealer with a population of 250,000, not to exceed a radius of 10 miles, but in no case less than seven miles." Code § 46.2-1500(1).

In response to Leesburg Honda's petition of protest, American Honda asserted that Leesburg Honda had no standing to protest the establishment of the new dealer since, using the most recent population data, the RMA for Leesburg Honda was 10 miles and the new dealer would be located more than 14 miles from Leesburg Honda. American Honda submitted its own study performed by Urban Science Applications, Inc., which concluded the RMA for Leesburg Honda was limited to 10 miles based on the dense population around the dealership. By affidavit, James A. Anderson, president of Urban Science Applications, stated based on the most recent Claritas update, the 2006 total population of the census tracts wholly or partially within a circle of 10 miles radius around Leesburg Honda was 288,803. He further stated that even excluding certain census tracts excluded by Technical Associates, the population still exceeded 250,000. Therefore, Anderson concluded the RMA for Leesburg Honda was a circle with a 10-mile radius.

The Commissioner determined that Leesburg Honda did not have standing to request a formal evidentiary hearing to protest the establishment of the new dealership. The Commissioner noted that neither party disputed Claritas was a recognized source for the recent population update referenced in the statute. Rejecting Leesburg Honda's argument that it could choose the population data more "lenient" to its position, the Commissioner decided the 2006 data, presented by both parties, was appropriate to use and gave a more accurate picture of Leesburg Honda's RMA. The Commissioner found that the RMA was a 10-mile radius, and since the proposed dealership would be located at least 14 miles from Leesburg Honda, the proposed dealership was outside Leesburg Honda's RMA and Leesburg Honda did not have standing to protest.

Leesburg Honda filed a motion to reconsider the Commissioner's decision. In support, Leesburg Honda submitted an affidavit of Glenn A. Watkins, vice president of Technical

Associates. In that affidavit, Watkins stated he was an expert on issues involving relevant market areas and advised the General Assembly on methods of determining population when the legislation was drafted. He further stated that he recommended the current statutory language regarding use of either the U.S. Census population or the most recent population update.[6] He concluded that based on his recommendations to the General Assembly, the more "lenient" of the two sources should be used. Leesburg Honda argued Watkins' affidavit represented legislative history that should be considered by the Commissioner. The Commissioner denied the motion to reconsider. The Commissioner explained "[o]ther than the recollection of one person who states he had some input into that legislative process," Leesburg Honda had "presented no specific legislative history on this specific statute." The Commissioner further reasoned "that the best evidence of legislative intent is the statute itself" and he had "endeavored to follow that statute in this case."

Leesburg Honda filed a petition for appeal in the trial court. The trial court adopted the reasoning of the Commissioner finding the decision "well reasoned."

## II. ANALYSIS

"In an appeal to the circuit court from a decision by an agency, the burden is upon the appealing party to demonstrate error." Carter v. Gordon, 28 Va. App. 133, 141, 502 S.E.2d 697, 700-01 (1998). Judicial review of an agency decision is limited to determining (1) "whether the agency acted in accordance with law;" (2) "whether the agency made a procedural error which was not harmless error;" and (3) "whether the agency had sufficient evidential support for its findings of fact." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1998). The review of an agency's factual findings "is limited to determining whether substantial

---

[6] "In determining population for this definition [of RMA], the most recent census by the U.S. Bureau of the Census or the most recent population update, either from the National Planning Data Corporation or other similar recognized source, shall be accumulated for all census tracts either wholly or partially within the relevant market area." Code § 46.2-1500.

- 5 -

evidence in the agency record supports its decision." Avante at Lynchburg, Inc. v. Teefey, 28 Va. App. 156, 160, 502 S.E.2d 708, 710 (1998). Under this standard, the reviewing "court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983).

In accordance with familiar principles of appellate review, "we review the facts in the light most favorable to sustaining the [Commissioner]'s action," Atkinson v. Virginia Alcohol Beverage Control Comm'n, 1 Va. App. 172, 176, 336 S.E.2d 527, 530 (1985), and "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted," Code § 2.2-4027. "[W]hen the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of delegated discretion.'" Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation omitted).

Under the Motor Vehicle Dealer Franchise Act, Code § 46.2-1500 et seq., the Commissioner of the Department of Motor Vehicles is directed to "promote the interest of the retail buyers of motor vehicles and endeavor to prevent unfair methods of competition and unfair or deceptive acts or practices." Code § 46.2-1501. When a motor vehicle franchisor intends to establish an additional franchise, the Commissioner, in carrying out his obligation to promote fair competition and if requested by a dealer in the RMA, must determine whether "the market will support all of the dealers in that line-make in the relevant market area." Code § 46.2-1569. If the dealer requesting the hearing is not in the same RMA as the proposed new franchise, the

protesting dealer is not entitled to a hearing. The Commissioner must necessarily determine the RMA if the parties are disputing the RMA of the existing dealer.[7]

We do not agree with Leesburg Honda that the Commissioner disregarded the plain words of the statute. The statute states that in determining population "the most recent census by the U.S. Bureau of the Census or the most recent population update, either from the National Planning Data Corporation or other similar recognized source, shall be accumulated for all census tracts either wholly or partially within the relevant market area." Code § 46.2-1500. That is precisely what the Commissioner did here. The Commissioner accumulated the data from and considered both sources; and then determined the 2006 data was more accurate than the 2000 data, considering the growth in population in the Northern Virginia area. "[S]ubstantial evidence in the agency record supports [his] decision," Avante at Lynchburg, Inc., 28 Va. App. at 160, 502 S.E.2d at 710, and we do not believe "a reasonable mind would necessarily come to a different conclusion," Virginia Real Estate Comm'n, 226 Va. at 269, 308 S.E.2d at 125. [8]

Leesburg Honda argues the Virginia Motor Vehicle Dealer Franchise Law is remedial in nature and should be liberally construed to advance the interests of the dealer by providing it with an opportunity to protest additional dealers of the same line-make in its sales competitive area. But, while the statute may be remedial in purpose and should be liberally construed, Provident Life and Acci. Ins. Co. v. Walker, 190 Va. 1016, 1025, 59 S.E.2d 126, 130 (1950), it

---

[7] We reject Leesburg Honda's argument that the determination of RMA is made twice – first on the issue of standing and then again at the hearing on the merits. If in dispute, the Commissioner must determine the RMA of the existing dealer. If the proposed franchise is in the same RMA as the existing dealer, the dealer is entitled to protest. If not, the statute has no application. The statute makes no provision for two separate determinations of RMA.

[8] Leesburg Honda also argues the Commissioner erred in disregarding legislative history in the form of the Watkins affidavit. Even if we considered this affidavit to be some evidence of legislative history, it was unnecessary for the Commissioner to consider it. See Marsh v. City of Richmond, 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987) (When the words of the statute are plain and unambiguous we need not resort to rules of statutory construction or legislative history.).

should not be interpreted in a manner inconsistent with its plain language, City of Richmond v. Richmond Metro. Auth., 210 Va. 645, 648, 172 S.E.2d 831, 833 (1970).  As we state above, under the plain language of the statute, the population for purposes of RMA is determined by accumulating "the most recent census by the U.S. Bureau of the Census or the most recent population update."  Consistent with this directive, the Commissioner considered both sources of data and found the 2006 data to be the most accurate.  Nothing in the statute requires the Commissioner to choose from these data sources the population figures that would be more "lenient" or more favorable to the interests of the existing dealer.  "To read the statute otherwise would be to add language to the statute, and we refrain from doing so."  Kitchen v. City of Newport News, 275 Va. 378, 395, 657 S.E.2d 132, 142 (2008).  Neither party disputed the reliability of the 2006 population data.  And the use of outdated population data neither serves the purpose of the Act in promoting fair competition among motor vehicle dealers nor serves to promote the interests of retail buyers of motor vehicles.  The Commissioner has been entrusted with wide discretion on issues arising under the Motor Vehicle Dealer Franchise Act, and we do not view his decision as either "arbitrary or capricious" or that it reflects a "clear abuse of delegated discretion."  Citland, Ltd., 45 Va. App. at 275, 610 S.E.2d at 324 (internal quotations and citation omitted).

For the foregoing reasons, we believe the Commissioner "acted in accordance with law[]" and "had sufficient evidential support for [his] findings of fact."  Johnston-Willis, Ltd., 6 Va. App. at 242, 369 S.E.2d at 7.[9]  Accordingly, the trial court did not err in affirming and adopting the decision of the Commissioner.

Affirmed.

---

[9] Because of our holding in this regard, we need not consider Leesburg Honda's argument that the trial court gave undue deference to the Commissioner's decision.