Present:  All the Justices

ADNAN SYED, ET AL.

v.  Record No. 091172     OPINION BY JUSTICE DONALD W. LEMONS
                                        June 10, 2010
ZH TECHNOLOGIES, INC., ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

I.  Facts and Proceedings Below

ZH Technologies, Inc. ("ZH Tech") and Abulala K. Naser ("Naser") filed a complaint against Adnan Syed ("Syed"), Sheriza Ousman ("Ousman"), and Zerowire Technologies, Inc. ("Zerowire"),[1] in which ZH Tech and Naser alleged six causes of action: (1) breach of fiduciary duty, (2) conversion, (3) unjust enrichment, (4) fraud, (5) violation of the Virginia business conspiracy statute, and (6) tortious interference with contractual relationships.[2]

ZH Tech was incorporated in Virginia on March 26, 1999. Naser, the sole owner, officer, shareholder, and employee of ZH Tech, testified that ZH Tech "is a technology company which provides information technology solutions to client[s]." Naser testified that from 1999 until May 2005, ZH Tech

---

[1] Syed, Ousman, and Zerowire collectively will be referred to herein as "the Defendants."

[2] The judgment below regarding conversion, unjust enrichment and fraud is not directly challenged on appeal and only is implicated to the extent the Defendants challenge the application of Code § 13.1-754 to ZH Tech and Naser's entire complaint.

predominately provided contract services to the IRS such as "a deficient support system for taxpayers to catch fraud" and a "data mining system." However, Naser also testified that in the fall of 2002, ZH Tech began to expand its work. Specifically, Naser testified that he wanted ZH Tech to obtain more government contract work.

In 2002, Naser, Syed, Rajiv Bhatia, Faisal Rana and Asad Khan signed a letter of intent to become partners in ZH Tech. They intended to obtain historically underutilized business zone ("HUBZone") status to obtain more government contract work in the area of information technology system services. See 13 C.F.R. § 126.103 (defining "HUBZone"). ZH Tech was denied HUBZone status. Naser, Syed, Rajiv Bhatia, Faisal Rana, and Asad Khan signed a document of dissolution by late summer of 2003 after "nothing materialized" for ZH Tech in obtaining government contracts.

After the partnership dissolved, Naser continued to seek business opportunities for ZH Tech. In the summer of 2003 he and Syed together sought to expand ZH Tech's business. Naser testified that he and Syed planned to expand ZH Tech to develop high-speed internet access for the hospitality industry and to obtain other government contracts. Naser also testified that he and Syed "agreed, and it was a gentleman's agreement that [ZH Tech] is going to be 50/50" and that he

would initially put in all the start up money, and Mr. Syed's duty [was] computer work, installation and the marketing and everything, and also I would support like the – equipment order, other management issues, discussing contracts and discussing installation support contract, discussing the prices for the hardware, discussing how much should we [bill] for the labor and all that.

While Naser maintains that he never told Syed he would be a half-owner, director, shareholder, or officer of ZH Tech, Naser considered Syed a partner of ZH Tech in both the government contract and high-speed internet access installation businesses of ZH Tech. Furthermore, Naser attempted to "formalize" his partnership by adoption of a written agreement with Syed in February 2005; however, Syed never signed the partnership agreement.

Syed corroborated Naser's testimony about starting a partnership with Rajiv Bhatia and Faisal Rana in 2002 and that the partnership dissolved in the summer of 2003.[3] Syed also corroborated Naser's testimony that Syed began to provide high-speed internet access installation and support in the hospitality industry using ZH Tech's name. However, Syed testified that while he and Naser agreed they would be

---

[3] Naser testified that he, Syed, Rajiv Bhatia, Faisal Rana, and Asad Khan formed a partnership, while Syed testified that he, Naser, Rajiv Bhatia, Faisal Rana, and "Mr. Hussein" formed a partnership. The letter of intent for this partnership was signed by Syed, Naser, Faisal Rana, and Rajiv Bhatia. No issue in this case turns on the identity of either "Mr. Hussein" or Asad Khan.

partners in ZH Tech for the government contract business, the work providing high-speed internet access for the hospitality industry was not included in the ZH Tech partnership. Syed testified that he deposited the revenue from the first "two, three jobs" he completed for the high-speed internet access business into the ZH Tech account that "Mr. Naser runs." Syed also testified that he and Naser opened a separate account in September 2003 dedicated to the high-speed internet access business. Syed also testified that he believed he was an owner, officer and director of ZH Tech because Naser told him he was.

However, when Syed tried to obtain documentation that he was an officer, director and owner of ZH Tech in the course of applying for a mortgage in December 2004, he discovered that Naser was the only officer, director and owner of ZH Tech and that ZH Tech's corporate existence was terminated on August 2, 2004. After that discovery, Syed was concerned about potential personal liability for the work he did for ZH Tech after ZH Tech's corporate existence was terminated. Syed decided not to sign the partnership agreement Naser had sent him. Instead he and his wife, Ousman, founded a new corporation, Zerowire, on February 15, 2005.

ZH Tech and Naser sought damages against Syed for breach of fiduciary duty and alleged that Syed, in his capacity as an

4

employee, breached a fiduciary duty owed to ZH Tech and Naser. In response, Syed denied ever being an employee of, or entering into an employment, nondisclosure or noncompetition agreement with, ZH Tech. Syed also pled that he and Naser "agreed that they would be Partners, [and] that [they] would share equally in ZH [Tech] to obtain and to perform a[] substantial subcontract for" a government agency, but that "Defendant Syed would operate his own separate wireless internet business using the ZH [Tech] name until the partners began performing the" government contract work.

At trial, Naser acknowledged that ZH Tech issued IRS 1099 tax forms to Syed in 2003 and 2004 that listed Syed's compensation as "nonemployee" and identified Syed as an "independent contractor," that ZH Tech never gave Syed a W-2 form, and that ZH Tech never withheld money for tax purposes from Syed. While Naser now disputes Syed's 1099 tax form for 2004, he stated that he did not tell the IRS in writing that this tax form was incorrect. Furthermore, Naser and ZH Tech's accountant testified that Naser never asked him to amend or revoke Syed's 2004 1099 tax form and that Naser had inquired about issuing a W-2 form to Syed but that he told Naser that a person's status cannot "retroactively" be converted after a form has been filed.

ZH Tech and Naser also sought damages against the Defendants for statutory business conspiracy. ZH Tech and Naser alleged that Syed and Ousman willfully conspired to injure ZH Tech by creating Zerowire and misappropriating ZH Tech's customers. At trial, ZH Tech and Naser introduced evidence suggesting a conspiracy between Syed and a man named Trevor Warner ("Warner"). However, Warner was not referenced in ZH Tech and Naser's complaint.

At the conclusion of the evidence, but before closing arguments were made, ZH Tech and Naser's attorneys moved to amend or conform the pleadings to the evidence pursuant to Code § 8.01-377. ZH Tech and Naser argued that the evidence at trial revealed that Syed was a partner, not an employee as alleged in the complaint. Therefore, ZH Tech and Naser sought to amend their complaint or conform their averments to the evidence that Syed breached his fiduciary duty as a partner. ZH Tech and Naser also moved to amend their business conspiracy cause of action to include a conspiracy between Syed and Warner, which had not been pled, or to conform their pleading and the jury instructions to the evidence that there was a conspiracy between Syed and Warner.

The trial court denied ZH Tech and Naser's motion to amend their complaint. The trial court stated that ZH Tech and Naser's motion to amend the fiduciary duty cause of action

6

would be "fundamentally unfair . . . at this point" in the trial.  The trial court also stated that it would be "fundamentally unfair" to permit amendment of ZH Tech and Naser's business conspiracy cause of action after the Defendants had "put on their case."  Nevertheless, the trial court allowed ZH Tech and Naser to argue to the jury, based upon instructions that conformed to the evidence, that Syed breached his fiduciary duty to Naser and ZH Tech as a partner and that Syed conspired with Warner against ZH Tech.

In closing arguments, ZH Tech and Naser argued that "there are really two conspiracies" in this case: the first being between Syed and Ousman who conspired by forming Zerowire "for the purpose of removing the high speed [i]nternet [access business] from ZH [Tech]," and the second between Syed and Warner who conspired to take business away from ZH Tech for the benefit of Zerowire.  The jury instructions on the business conspiracy claim stated in part that the jury "shall" find for Naser and ZH Tech if they proved by clear and convincing evidence that "Zerowire Technologies or Mr. Syed or Ms. Ousman . . . and at least one other person acted in concert, agreed, associated, mutually undertook or combined together."

The trial court also gave the jury several instructions on damages.  Regarding compensatory and punitive damages,

Instruction I stated, "[i]f you find compensatory damages against a Defendant, then you, if you deem it appropriate, may assess punitive damages on a separate line of the verdict form against that Defendant. If you decide to award punitive damages, you must attribute them to each separate violation." Similarly, Instruction 70 stated, "[i]f you award punitive damages, you must state separately in your verdict the amount you allow as compensatory damages and the amount you allow as punitive damages."

The jury verdict form was divided into several different sections. In relevant part, the first section asked the jury to decide if Naser and ZH Tech proved their claims against the Defendants. The next section asked the jury to determine the actual, numerical amount of the "Plaintiffs' Damages" for each cause of action, if any. In the "Plaintiffs' Damages" section, the jury also was instructed: "If you found in favor of Plaintiffs on their conversion, tortious interference or business conspiracy claims you may, but are not required to, assess punitive damages against [the] Defendant[s] in accordance with the instructions which have been given you." The jury verdict form contained this paragraph along with a line for the amount of punitive damages, if any, the jury might award against each of the defendants (Zerowire, Syed, and Ousman).

After deliberations, the jury found Syed and Zerowire liable to Naser and ZH Tech for conspiracy and tortious interference, but then awarded "[$]0" damages against Zerowire and Syed for both conspiracy and tortious interference. However, the jury awarded punitive damages against Zerowire of $375,000 and against Syed for $375,000. The jury also found Syed liable for breach of fiduciary duty and awarded Naser and ZH Tech $22,500 against Syed.[4]

Neither the parties nor the trial court raised an issue with the jury's verdict immediately after it was rendered and the jury was dismissed. However, the trial court suspended the order confirming the jury verdict so that the Defendants could file a memorandum of law on their motion to strike the plaintiffs' case, as well as other post-trial motions.

One of the Defendants' arguments was that the trial court erred by not striking Naser and ZH Tech's evidence because ZH Tech was not in existence at the time of the alleged wrongdoings. ZH Tech was incorporated in 1999; however, due to its failure to file an annual report and pay its annual registration fee, ZH Tech's existence was terminated on several occasions. The Defendants contend all of the

---

[4] The jury found Syed not liable for conversion, found Syed and Ousman liable for unjust enrichment and awarded Naser and ZH Tech damages in the amount of $9,000 against Syed and $13,500 against Ousman, and found Syed liable for fraud and awarded Naser and ZH Tech $22,500 against Syed.

9

allegations of wrongdoing against them occurred during periods of ZH Tech's terminated existence, and therefore, ZH Tech could not maintain a cause of action against them. ZH Tech responded to the Defendants' motion to strike by arguing that once ZH Tech was reinstated, it was to be treated as if its corporate existence was never terminated.

After both parties briefed these post-trial issues, the trial court issued a letter opinion and an order that confirmed the jury verdict "as to its findings of liability" and set aside the verdict as to damages. Relying on Zedd v. Jenkins, 194 Va. 704, 74 S.E.2d 791 (1953), the trial court held that the jury's misunderstanding of the instructions and jury verdict form was limited to damages alone and ordered a new trial limited to that issue.

After the retrial on damages, the trial court entered judgment for Naser and ZH Tech against Syed for business conspiracy, tortious interference, breach of fiduciary duty, unjust enrichment, and fraud. The award was in favor of Naser and against Syed "in the amount of $162,658.21 (which includes compensatory damages of $36,146.27 plus $108,438.81 of trebled damages pursuant to Virginia Code § 18.2-500(a), and $18,073.13 for punitive damages)." Also, the award was in favor of ZH Tech and against Syed "in the amount of

$180,731.34 (which includes $108,438.81 for compensatory damages and $72,292.53 for punitive damages)."

As to Zerowire, the trial court entered judgment in favor of Naser and ZH Tech and against Zerowire on business conspiracy and tortious interference. The award was in favor of Naser and against Zerowire "in the amount of $23,245.89 (which includes $23,245.89 of trebled damages pursuant to Virginia Code § 18.2-500(a))." Also, the award was entered in favor of ZH Tech and against Zerowire "in the amount of $11,622.94 (which includes $7,748.63 for compensatory damages and $3,874.31 for punitive damages)."

The trial court also entered judgment in favor of Naser and ZH Tech and against Ousman on the unjust enrichment cause of action; however, no damages were awarded to Naser or ZH Tech against Ousman. Finally, the trial court awarded Naser and ZH Tech attorneys' fees "in connection with the business conspiracy claim" in the amount of $644,447.35 and expenses of $31,943.30. While the trial court noted "that if attorney fees could not be recovered under the business conspiracy claim, the Court would have ordered attorney fees in an equivalent amount under the fraud claim," the trial court only awarded attorneys' fees and costs under the business conspiracy claim.

The Defendants timely noted their appeal to this Court, and we granted the Defendants an appeal on six assignments of error:

1. The trial court erred in instructing the jury on breach of partnership duty theory and on the jury's responsibility to return a verdict against Mr. Syed if the jury found Mr. Syed breached a partnership fiduciary duty to Naser despite the fact that such theory was never pled in the bill of complaint.

2. The trial court erred in allowing Naser and ZH Tech to argue to the jury that the jury may find a civil conspiracy if Mr. Syed conspired with Trevor Warner ("Mr. Warner") despite the fact that the bill of complaint neither listed Mr. Warner as a defendant nor as a co-conspirator under its civil conspiracy count.

3. The trial court erred in confirming the jury's verdict as to the issue of liability and ordering a new trial on damages despite the fact that the jury in the first trial awarded "0" damages to the prevailing party on the count of civil conspiracy and one cannot be found guilty of civil conspiracy until and unless it can first be proven that damages have been sustained.

4. The trial court erred in ordering a new trial on damages after the jury came back with a $0 verdict on civil conspiracy and tortious interference counts because claims cannot be retried when punitive damages are awarded, but no compensatory damages are awarded as a predicate.

5. The trial court erred in refusing to strike all of plaintiffs' evidence despite the fact that ZH Tech's corporate existence was terminated during the time of the alleged wrong.

6. The trial court erred in awarding attorneys' fees to Naser and ZH Tech because they failed to segregate them from attorneys' fees expended on other claims.

## II.  Analysis

### A. Standard of Review

12

We review this appeal under well-settled principles.

> When parties come before us with a jury verdict that has been approved by the trial court, they hold the most favored position known to the law. The trial court's judgment is presumed to be correct, and we will not set it aside unless the judgment is plainly wrong or without evidence to support it. We view the evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party at trial.
>
> Xspedius Mgmt. Co. v. Stephan, 269 Va. 421, 424-25, 611 S.E.2d 385, 387 (2005) (quotations and citations omitted). We review matters of law de novo. Hubbard v. Dresser, Inc., 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006).

Banks v. Mario Indus., 274 Va. 438, 450-51, 650 S.E.2d 687, 694 (2007).

## B. Code § 13.1-754

"Statutory interpretation is a question of law which we review de novo, and we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." Wright v. Commonwealth, 278 Va. 754, 759, 685 S.E.2d 655, 657 (2009). The Defendants argue that the trial court erred by not striking Naser and ZH Tech's evidence because ZH Tech's corporate existence was terminated at the time of all the alleged wrongdoings.

Code § 13.1-754 states in relevant part:

Upon the entry by the Commission of an order of reinstatement, the corporate existence shall be deemed to have continued from the date of termination of corporate existence, and any liability incurred by the corporation or a director, officer, or other agent after termination of corporate existence and before the reinstatement shall be determined as if the termination of corporate existence had never occurred.

However, prior to a 2004 amendment by the General Assembly, former Code § 13.1-754 (1999) read in relevant part:

Upon the entry by the Commission of an order of reinstatement, the corporate existence shall be deemed to have continued from the date of termination of corporate existence except that reinstatement shall have no effect on any question of personal liability of the directors, officers or agents in respect to the period between termination of corporate existence and reinstatement.

Under former Code § 13.1-754, prior to the 2004 amendment, it is clear that the General Assembly intended for corporate officers, directors and agents to remain personally liable for the periods of time a corporation's existence was terminated, regardless whether the corporation's existence was reinstated. However, in the 2004 amendment to Code § 13.1-754, the General Assembly adopted the principle that if a corporation's existence is reinstated the legal consequence of actions by officers, directors and agents are determined as

14

though the corporation remained in existence throughout the period of termination.  See 2004 Acts ch. 601.

While this principle applies to any potential liability of corporate officers, directors and agents, the General Assembly also expressly provided that "[u]pon the entry by the Commission of an order of reinstatement, the corporate existence shall be deemed to have continued from the date of termination."  Id.  ZH Tech's reinstatement following termination has the retroactive effect of placing it in a position as if its termination had never occurred.  The trial court did not err in denying the Defendants' motion to strike.

C. Breach of Fiduciary Duty

Syed argues on appeal that the trial court erred by allowing Naser and ZH Tech to present a new theory under their breach of fiduciary duty cause of action that was not pled in their complaint.  In their complaint, Naser and ZH Tech only allege that Syed breached a fiduciary duty to ZH Tech as an employee.

As previously recited, the trial court denied ZH Tech and Naser's motion to amend the complaint to allege breach of fiduciary duty both as an employee and a partner, but nonetheless gave instructions to the jury and permitted closing argument that accomplished the same objectives.

15

The jury found that Syed breached a fiduciary duty to ZH Tech; however, the record does not reveal whether the jury found that he committed such breach in the capacity of an employee or as a partner.

We have previously stated:

> Code § 8.01-377 provides that when, at trial, there appears to be a variance between the evidence and the allegations, the court "if it consider that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby," may, instead of allowing the pleadings to be amended, direct that the facts be determined. The statute further provides that after such factual finding, the court "shall give judgment according to the right of the case," if it considers that the variance "could not have prejudiced the opposite party."

Hensley v. Dreyer, 247 Va. 25, 27, 439 S.E.2d 372, 373 (1994).

This Court reviews whether the trial court correctly determined that a variance was not prejudicial to a party under an abuse of discretion standard. See id. at 30, 439 S.E.2d at 375. Furthermore, this Court has held that

> [w]e adhere to the principle that a court may not base a judgment or decree upon facts not alleged or upon a right, however meritorious, that has not been pleaded and claimed. Every litigant is entitled to be told in plain and explicit language the adversary's ground of complaint. Ted Lansing Supply Co. v. Royal Aluminum and Constr. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 230 (1981). Like any other rule, however, this principle must be reasonably applied, keeping in mind that its purpose is to prevent surprise. Kennedy v.

16

> > *Mullins*, 155 Va. 166, 180, 154 S.E. 568, 572 (1930).
>
> > In a case of variance, Code § 8.01-377 gives a trial court the discretion to apply the foregoing rule reasonably either by permitting amendment of the pleadings (and possibly postponing the trial) or, in lieu of amendment, by having the facts determined and rendering judgment, but only on the condition that no prejudice results. While the statute is remedial in purpose and should be liberally construed, *Provident Life and Accident Ins. Co. v. Walker*, 190 Va. 1016, 1025, 59 S.E.2d 126, 130 (1950), it should not be interpreted in a manner inconsistent with its plain language. *City of Richmond v. Richmond Metro. Auth.*, 210 Va. 645, 648, 172 S.E.2d 831, 833 (1970).

*Hensley*, 247 Va. at 30, 439 S.E.2d at 375.

ZH Tech and Naser did not plead that Syed breached a fiduciary duty as a partner of ZH Tech. Rather, ZH Tech pled that Syed breached a fiduciary duty to ZH Tech as an employee. Syed presented a defense that he was not an employee of ZH Tech but did not have the opportunity to defend against the partnership allegation. The trial court observed that it would have been "fundamentally unfair" for ZH Tech and Naser to amend the complaint after the close of all the evidence. We hold that it also was fundamentally unfair and prejudicial to Syed to accomplish the same objective by permitting jury instructions and argument on matters not pled. The trial court erred by allowing Naser and ZH Tech's breach of fiduciary duty claim to proceed on the unpled claim that Syed

17

breached a fiduciary duty as a partner.  We will therefore reverse the judgment concerning breach of fiduciary duty and remand for retrial on the merits.  On retrial, any renewed motion for amendment of pleadings may be considered in the discretion of the trial court.

## D. Business Conspiracy

On appeal, Syed and Zerowire raise several issues regarding the judgment on the business conspiracy cause of action (Code §§ 18.2-499 and 18.2-500).  First, Syed and Zerowire argue that the trial court erred in allowing Naser and ZH Tech's business conspiracy cause of action to proceed to the jury under a theory not pled in Naser and ZH Tech's complaint.  Specifically, Syed and Zerowire argue that ZH Tech and Naser alleged a conspiracy between Syed and Ousman against ZH Tech and the trial court erred by instructing the jury it could consider evidence and argument that Syed conspired against ZH Tech with Warner as a theory for finding Syed liable to ZH Tech.

Second, Syed and Zerowire argue that the trial court erred in granting a new trial on damages because proof of some damage is an element of the cause of action and here the jury awarded "[$]0" compensatory damages.  We need only to resolve the second question.

18

The jury found Syed and Zerowire liable for business conspiracy; however, the jury awarded "[$]0" compensatory damages for the business conspiracy cause of action. Additionally, the jury awarded punitive damages against Syed in the amount of $375,000 and Zerowire in the amount of $375,000. The trial court confirmed the jury's verdict as to liability, but granted a new trial on damages. It is not necessary to recite what occurred on the retrial for damages because the trial court erred in confirming the jury's verdict as to liability.

Code § 18.2-499(A) provides as follows:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or . . . shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

Code § 18.2-500(A) provides:

> Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

An action under these statutes is different from a common law action for conspiracy. Code § 18.2-500 requires a finding

of some compensatory damages as an element of determining liability under the statute. Once liability is found, the compensatory damages are subject to trebling. See Code § 18.2-500. However, if there is no finding of compensatory damages, liability under this statute has not been established because no "injury" has been "sustained." "Consistent with Code § 18.2-500, the jury instructions required the jury to find proof of injury and proof that the injured party suffered damages as a predicate to a verdict on a business conspiracy claim." Ulloa v. QSP, Inc., 271 Va. 72, 78 n.1, 624 S.E.2d 43, 47 n.1 (2006). Because the jury's verdict form awarding "[$]0" clearly indicated that no injury was sustained, Naser and ZH Tech did not bear their burden of proof on liability and it was error for the trial court to conduct a retrial on damages. We will reverse the trial court's judgment on the business conspiracy cause of action and enter judgment for Syed and Zerowire.

In addition, because the award of $644,447.35 in attorneys' fees and $31,943.30 in costs to Naser and ZH Tech was made pursuant to Code § 18.2-500 and because we reverse the business conspiracy judgment upon which it was based, we must also reverse that award.

### E. Tortious Interference

Syed and Zerowire assert that the trial court erred in granting a new trial on damages because the common law tortious interference claim cannot be retried when punitive damages were awarded but compensatory damages were not. We agree.

In deciding to grant a new trial on damages only, the trial court, relying solely on Zedd, 194 Va. 704, 74 S.E.2d 791, reasoned that the jury's entry of punitive damages but not compensatory damages was due to the jury's misunderstanding of the jury instructions and the jury verdict form. The trial court held that the jury's award of punitive damages without corresponding compensatory damages did not have an "impact upon liability." Accordingly, the trial court held that the jury's misunderstanding of the instructions and jury verdict form was limited to damages alone and ordered a new trial on damages only.

The jury instructions on damages stated that, in order to award punitive damages, the jury had to award compensatory damages. Instruction I stated that "[i]f you find compensatory damages against a Defendant, then you, if you deem it appropriate, may assess punitive damages on a separate line of the verdict form against that Defendant. If you decide to award punitive damages, you must attribute them to each separate violation." Instruction 70 also stated that

21

"[i]f you award punitive damages, you must state separately in your verdict the amount you allow as compensatory damages and the amount you allow as punitive damages."  Furthermore, the jury verdict form had a specific section for the jury to assess the amount, if any, they could award for punitive damages.

While the trial court relied on Zedd, that case is distinguishable.  In Zedd, the jury's verdict originally stated, "'[w]e, the Jury, find for Plaintiff in the amount of $3,000.00 as punitive damages only,'" and the trial court told the jury to change their verdict to, "'[w]e the Jury, find for the Plaintiff in the amount of $3,000.00.'"  194 Va. at 705-06, 74 S.E.2d at 792.  We held in Zedd that

> [t]he original finding of the jury was not a
> verdict for defendant.  It was a finding for
> plaintiff in express terms.  It was illegal in
> that it contained an assessment of punitive
> damages without finding that plaintiff was
> entitled to any compensatory, or even nominal,
> damages.  Evidently the jury misunderstood, or
> misconstrued the instruction on damages.

Id. at 708, 74 S.E.2d at 793.

However, here, after being instructed that in order to award punitive damages it had to award compensatory damages, the jury explicitly found zero compensatory damages against Syed and Zerowire on the tortious interference claim.  This case is distinguishable from Zedd because in that case the

22

jury's verdict did not explicitly find zero compensatory damages.  Because the jury here explicitly found zero compensatory damages but awarded punitive damages, the trial court erred by granting a new trial on damages.

It is well-established that "an award of compensatory damages . . . is an indispensable predicate for an award of punitive damages, except in actions for libel and slander." Gasque v. Mooers Motor Car Co., 227 Va. 154, 159, 313 S.E.2d 384, 388 (1984); see also Murray v. Hadid, 238 Va. 722, 732, 385 S.E.2d 898, 905 (1989).  Therefore, we will reverse the trial court and will enter final judgment for Syed and Zerowire on the tortious interference claim.

## III.  Conclusion

For the reasons stated, we hold that the trial court erred by entering judgment against Syed and Zerowire on the business conspiracy claim and the tortious interference claim and for allowing the breach of fiduciary duty claim to proceed despite variance from the factual averments and legal theory pled.  Accordingly, we will affirm in part and reverse in part the judgment of the Circuit Court of Fairfax County and remand the breach of fiduciary duty cause of action to be retried.

Affirmed in part,
reversed in part, and
remanded in part.

23